SCHOOL COMMISSIONERS VS AIKIN.

*Questions as to the sale of school lands by commissioners.*

1. The school commissioners of the several townships in this State, are special corporations, and as such, have no power to take and hold lands.

2. So the school commissioners cannot maintain *indebitatus assumpsit*, against the vendee of lands, sold as the property of the township, to recover their price.

3. But where lands, the property of a township, are sold, legally, by the school commissioners, and the vendee refuses to comply with the terms of sale, by giving his notes, it seems, that an action might well lie in favor of the commissioners, and a recovery in damages be effected.

4. So, also, it seems, the school commissioners would have the authority, where a vendee refused to comply with the terms of a sale of such lands,—to effect a re-sale upon the terms prescribed in the statutes.

5. A condition, imposed by school commissioners, in effecting a sale of a sixteenth section,—*that if the vendee failed to comply with the terms of sale, by giving notes with security, the lands should be re-sold, and the first purchaser held responsible,*—would not, it seems, render void a contract of sale, or defeat an action by the commissioners, to recover of the first purchaser, after a *legal* re-sale, the difference of price, between the first and last sale.

6. But where school commissioners, under such conditions, sold lands of the township, and on the refusal of the vendee to comply, effected a re-sale, at a price *less than the minimum affixed by law*—it was held that an action did not lay to recover of the first purchaser, the difference between the first and last sale.

5 P. 22

On writ of error to the Circuit Court of Tuska-loosa county.

This was an action of assumpsit against the defendant in error, in the Court below, and was prosecuted in the name of the *school commissioners of township twenty-two of range ten, west.* The declaration disclosed that at an election, duly held by the plaintiffs, in township twenty-two, of range ten, west, in the county of Tuscaloosa, on the twelfth day of October, in the year of our Lord, eighteen hundred and thirty-three, to ascertain the sense of the qualified electors, inhabitants of said township, respecting the sale of the sixteenth section in said township, it was ascertained that a majority of said electors at said election, voted to sell the sixteenth section; and that the result of said election was by said commissioners, duly certified to the Judge of the County Court of said county of Tuskaloosa, on the —— day of ——, eighteen hundred and thirty-three: and afterwards, to wit, on the twentieth day of November, in the same year, being more than twenty days after said election, the Judge of the County Court of said county of Tuskaloosa, issued an order of sale to said commissioners, to sell said sixteenth section; on the reception whereof, the said sixteenth section was surveyed, and laid off into eight lots, *of eighty* acres each, and a *minimum* price, then and there affixed upon the same—as follows, to wit:

Upon lot numbered one, the *minimum* price of three dollars and fifty cents; upon lot numbered two, four dollars; upon lot numbered three, four dollars; upon lot numbered four, five dollars; upon

lot numbered five, five dollars; upon lot numbered six, six dollars; upon lot numbered seven, six dollars and fifty cents; and upon lot numbered eight, six dollars and fifty cents: That afterwards, to wit, on the twenty-eigth day of December, in the year of our Lord, eighteen hundred and thirty-three, having previously given thirty days public notice of the time and place of sale, by advertisement in three public places, within said township, the said several lots of land were offered for sale at public auction; and that previous to the commencement of the said sale, the conditions of said sale, were published aloud, in the presence and hearing of all persons who had assembled at the sale, which conditions were, that said lands would be sold on a credit of one, two, three and four years, in equal annual instalments,—that the purchaser or purchasers, would be required to give separate notes for each instalment, with approved surety, payable to the President and Directors of the Bank of the State of Alabama, with interest at six per cent. from the day of sale; and that every person or persons, bidding off any lot or lots of land, and failing to comply with the said terms of sale, by giving their notes with approved surety, as aforesaid, the said lot or lots of land, would be resold, and the first purchasers held responsible for the difference, if any there might be, in the price between the first and second sale: That at said sale, the defendant was the highest and best bidder for lots, numbered six and eight; and lot numbered six, was struck off to the defendant, at the sum of ten dollars and one cent per acre; and lot num-

bered eight, was struck off to the said defendant, at the sum of seven dollars per acre : And although the said commissioners were ready and willing, and did offer to give to said defendant, the certificates of purchase, as required by the statute, yet defendant had neglected and refused to comply with the conditions of said sale, and did not, nor would give his notes with approved surety, payable according to the conditions of said sale, in one, two, three and four years, in equal annual instalments, &c. Whereupon, the said commissioners, afterwards, to wit, on the seventeenth day of May, eighteen hundred and thirty-four, re-sold the said lots, numbered six and eight, as aforesaid, at public auction, upon the conditions aforesaid; at which sale, said lot, numbered six, was bid off at the price of three dollars per acre; and said lot, numbered eight, at the price of two dollars and seventy-five cents—and the difference, it was averred, between the first and last sales of said lots, amounted to the sum of nine hundred dollars and eighty cents : And which defendant by means of the premises, became liable to pay, &c.

In addition to this special count, the *indebitatus* count, was also inserted.

A demurrer to the declaration, having been sustained by the Court below, the plaintiffs prosecuted a writ of error here, and assigned the judgment upon demurrer as a cause for reversal.

Argued by *Ellis & Peck* for the plaintiffs in error, and by *Porter, Crabb* and *Stewart*, contra.

GOLDTHWAITE, J.—The declaration in this cause, contains two counts in assumpsit, one a *general indebitatus*, and the other, *special*, on a contract therein set out. A demurrer was interposed in the Court below, on which judgment was rendered for the defendant, and this judgment is now sought to be reversed.

The *indebitatus* count, is for one hundred and sixty acres of land, alleged to have been sold by the plaintiffs to the defendants, and presents the general question, whether they can hold lands, in any way or under any circumstances, whatever; for if they are enabled to *hold* lands, it would seem difficult to resist the conclusion, that they were authorised to sell them; on the other hand, it seems clear, if the plaintiffs are in no case authorised to be the owners of lands, they cannot maintain assumpsit for the sale of that which could not belong to them.

By the several acts in relation to schools and school lands,* the school commissioners of each township in the State, are created special corporations, and are authorised to sue and be sued by their corporate name; but all the powers which are conferred on them, seem to be special in their character, and appear to have been conferred on them, solely with the view of enabling them to manage the sixteenth section and the school funds of the township, arising from the rents and revenue of this section, and to enable them to sue and be sued, in all matters relative to the same, without the inconvenience which would arise, if they were considered as natural persons.

*Aik. Dig. 370.

By no part of the several acts in relation to school and school lands, are these corporations invested with the power to hold lands. The legal title in the sixteenth section, is in no wise transferred to them, if indeed it could be, and the same seems to remain in the inhabitants at large, of each township. Indeed, any inference of a power to purchase and hold lands, by virtue of their special corporate powers, is removed by the fact that this power is directly given to the trustees of the several school districts, in the respective townships, which are constituted special corporations by the same act, and are empowered to hold lands, not exceeding two acres, for school purposes. If the intention was to confer this power on the school commissioners, it is difficult to assign any reason why it was omitted in the act.

If the case was one of first impression, we should feel no hesitation in deciding that a special corporation, so constituted, had no capacity to take or hold lands, and consequently, no power to sell and convey, but we are warranted by authority in the positions which we lay down.

Chancellor *Kent* recognizes the rule, that statute corporations cannot take and hold real estate, for purposes foreign to their institution.* The same principle was held by the Supreme Court of New York, in the case of *Jackson vs Hartwell.*†

Some difficulty arises in the consideration of this count, because the statutes we have before referred to, authorise the school commissioners, when the consent of the inhabitants of the township shall be obtained, to sell the sixteenth section; but this is

*2 Kent's Com. 229.

†8 Johns. R. 425.
3 Peck 239.

removed, when we ascertain from the law, that this power of sale is entirely naked, creating no interest whatever, in the school commissioners, and not even permitting them to receive the proceeds of sale, and directing the notes therefor, to be made payable to the President and Directors of the Bank of the State of Alabama.

Another view which can be taken of the statute, entirely obviates any difficulty on this subject. The school commissioners have no authority to dispose of the sixteenth section, unless a certain price be obtained; and not even then, can a certificate of purchase be given by them, unless notes payable in one, two, three and four years, bearing interest at the rate of six per cent. per annum, with two securities be given.—(See Sec. 35. Title, schools and school lands.*)

*Aik. Dig, 378.

This provision is evidently intended for the security of the inhabitants of the township, and the act would be effectually evaded and rendered inoperative, if the plaintiffs could sue for the purchase money of the lands sold—no security would be given, and the time of credit might be prolonged by a suit.

For these reasons, we are of opinion, that the general *indebitatus* count, cannot be supported.

The *special* count, presents questions which are novel, and in some respects, difficult of solution.

From this it appears, that the inhabitants of the township, for which the plaintiffs are school commissioners, had determined in the manner prescribed by law, to give their consent to a sale of the sixteenth section, and the statutory proceedings

being first had, the plaintiffs after affixing a *mini-mum* price on the several lots into which the section was divided, proceeded to sell the same, in conformity with the requisitions of the law.

It alleges, "that the conditions of sale, were published aloud in the presence and hearing of all who had assembled at the sale." These conditions were those proscribed by the act authorising the sale, and *"that any person or persons, bidding off any lot or lots of the land, and failing to comply with the said terms of sale, by giving their notes, with approved security, the lot or lots, would be re-sold, and the first purchasers held responsible."*

It then alleges that the defendant became the purchaser of lots, numbered six and eight, for the first of which he bid ten dollars and one cent per acre, and for the last, he bid seven dollars per acre, at which prices they were struck down to him.

The *minimum* price of these lots, was six dollars for the first, and six dollars and fifty cents, for the last.

The count then alleges that the defendant *wholly refused and neglected to comply with the conditions of the sale, and did not nor would give his notes, with approved security, as provided by law.* It then states that a re-sale took place, after a lapse of more than three months, on the same conditions, at which sale these two lots were sold; the first for three dollars per acre, and the last, for two dollars and seventy-five cents per acre, of which the defendant had notice.

The count then concludes with a *super se assumpsit*, for the difference between the two sales—

and the breach of the contract is alleged to be the non-payment of the several sums of money mentioned in each count.

It is urged against this count, that the plaintiffs are not authorised by any law, to maintain any suit for any breach of contract, relative to the sale of the sixteenth section, because the authority is given to another corporation to receive the money. But we think this does not follow as a consequence— if it did any person could at pleasure, become a purchaser and violate his contract with impunity, or the sale of the section might be delayed or entirely prevented, by one disposed to retard the action of the commissioners.

The general object of all the statutes, in relation to schools and school lands, seems to be to enable the school commissioners, to act for the township, in all matters relating to the sixteenth section; and we are satisfied they have the same right to pursue any remedy in relation to the same, which the inhabitants of the township, could pursue, except in such cases only, where an action is contemplated by other persons.

We have already determined, that a *general indebitatus* count could not be sustained, because the commissioners had no authority to receive the money for the sale, as it was to be paid to others, under the act of the legislature, and because the township must have the security required, before any title can pass by the sale. These reasons would be equally decisive, when applied to any action at law on the contract, however special

5 P.        23

the declaration might be framed; but they do not apply to any action which is brought to recover damages for a failure to comply with a legal contract, entered into with the school commissioners. The contract, as such in the present case, could not be enforced in a Court of law, by a recovery of the price, (even if an action could be maintained for the same, until the credit had expired,) because the interests of the township could not be protected by the security required on a sale; but when the contract is at end, by the refusal of the purchaser to complete it, by giving his notes, as required, an action would at once lie, and if damages had been the consequence of the refusal, a recovery could not be prevented. After a purchaser has absolutely refused to comply with the contract of sale, the seller is at liberty to consider the contract at an end, and immediately sue for the damages he has sustained. This rule is perfectly well established as to goods.—Gerard vs Tagart.*—Mussen vs Price.†

*5 S. & Raws 19.
†4 East 147.

But it is unnecessary to determine whether the same principle applies to sales of land in general. So far as this case is concerned, we entertain no doubt but the commissioners were authorised to re-sell the land. Indeed the act of the legislature makes it their duty so to do. The sale was not executed, without the security required was given, and therefore might be considered inoperative, under the act refered to, after a refusal by defendant, to give his notes: and the *minimum* not having been realised, a re-sale became necessary.

It is also contended, that by annexing a condition of re-sale, the whole contract became void, and

there was no legal obligation on the defendant to complete it—that one of the consequences which might grow out of such condition, was an act which the commissioners could not perform, as at such re-sale, the *minimum* price might not be offered, in which event no sale could be made. This argument, however ingenious, will, when examined, appear to be without foundation. The condition imposed was a lawful one, and was made for the benefit alone, of the commissioners. It was one on which the defendant could not insist, nor could it be faily inferred, that they would extend it to a case, where they would have no authority to make a re-sale. The whole argument is in fact predicated on the idea, that this condition forms a part of the *contract*. If so, the defendant might well insist that he had a right to refuse to give his notes, and insist on a re-sale, as the property might sell for more, on the second sale, than it brought at first, and that he was in that event, entitled to the surplus

We are aware, that Mr. Justice *Livingston,* in the case of *Webster & Ford vs Hoban,*[*] seems to have entertained the impression, that it was the purchasers right, to insist on a re-sale, and that he would be entitled to the surplus, if any; but it seems to us that this opinion, has neither reason nor principle to support it. If it was law, every pauper in the land, would be authorised to purchase at any sale, where this was a condition, and then insist that he was entitled to the chance of a profit on a re-sale, and rest his right on the contract.

*[*7 Cranch 399.]*

We are not alone in this opinion—all the English

cases clearly recognise the principle, that on a re-sale the first purchaser, has no right to the increased price. *

*Sugden on Vendors 34, and cases cited.

We think it sufficient to say, in answer to the position, as taken, that the condition is one which is legal, and being made solely for the security and protection of the seller, may be waived by him, without impairing any of his rights, or it may be insisted on when made, in relation to real estate, and the first purchaser held responsible for any deficit on a re-sale.

If in the case under consideration, the re-sale had produced the *minimum* price affixed to the several lots, we should determine that the defendant was liable to a recovery in the suit as brought; but as the contract is laid, the liability of the defendant is charged to arise from an illegal act, or rather void act of the plaintiffs. They had no authority to sell for a less sum than the *minimum,* and yet this sale is the foundation of the *super se assumpsit,* laid in the declaration.

A re-sale was not necessary to fix the liability of the defendant for a breach of contract, and the action in another form could have been maintained without showing a re-sale: it might be one mode of ascertaining the amount of damages, perhaps the best, but certainly not the only way of ascertaining the same.

It was said at bar, that this declaration in the special count might conform to this view of the case, by striking out all in relation to the subsequent sale, and the *super se assumpsit.* If this was done, it would

resemble a declaration in case, but the breach would not be appropriate; and if it was in this form, the action would be case, and there being a count in *assumpsit* in the declaration, there would be a misjoinder of action; and this defect would be equally fatal with those pointed out.

The declaration cannot be supported, and the judgment must be affirmed.

COLLIER, J, not sitting.