Adams *vs*. McMillan, Ex'or, &c.

ADAMS VS M'MILLAN, ex'or, &c.

1. A writing, whatever its particular form, will be a sufficient memorandum or note in writing, as required by the statute of frauds,—provided it contains the essential terms of the contract, expressed with such certainty, that they may be understood from the instrument itself, or from some other writing to which it refers,—without recourse to parol proof; and be signed by the party to be charged.

2. An auctioneer, is the agent of the purchaser, of either lands or goods, at auction, to sign a contract for him, as the highest bidder: and his writing the name of the purchaser on the memorandum of sale, immediately on receiving the bid, and knocking down the hammer,—is a sufficient signing of the contract, within the statute of frauds.

3. If the memorandum of the sales of lands, be in fact, signed by the purchaser, or by his agent, the auctioneer, in any part of it,—it will be a sufficient signing within the statute of frauds: But where the memorandum of such sales, is not signed by the auctioneer, or his clerk, or by the vendor or vendee,—it can have no influence to take a case without the statute of frauds.

4. The amount of the purchase money, is an important part of every contract, for the sale of lands; and should be disclosed in every writing, which is relied on to take a case without the influence of the statute of frauds—

5. Therefore, a letter written by the purchaser, subsequent to a sale of lands by auction, and addressed to the vendor, will not take the case out of the statute of frauds;—the letter only containing a statement of the contract, for the purchase of the lands, but exhibiting no particular of the price to have been given; nor referring to any other writing which did so.

6. Nor would the reference, in the letter, to certain notes, tendered by the vendee to the vendor in payment of the land,—which notes were not before the court,—alter the principle.

7 P.                                10

Adams vs. McMillan, Ex'or, &c.

7. The imperfect memorandum of the sale, by an auctioneer, of real estate, and a letter addressed by the vendee to the vendor, cannot be so united and considered together, as to take such sale out of the prohibition of the statute of frauds,—there being no direct reference in the one, to the other, so as, in effect, to render them one, without the aid of parol proof.

8. A vendor of lands, upon a breach of contract on the part of the vendee, is entitled to recover such damages, as he has sustained by the violation of the contract of sale; and the difference between the price at which the land is first bid off, and the price for which it sold, at a subsequent and second sale, affords a good criterion of damages.

9. Such difference of price would not in such case be binding upon the jury, but would be proper testimony to be received as a medium of coming to a correct conclusion as to the amount of damages sustained.

10. To authorise such a rule, however, the second sale should appear to have been conducted with fairness, and that no means were resorted to, to impair the value of the estate, in public estimation.

11. But where a declaration does not aver as part of the contract of sale a condition, that the lands shall be re-sold in case of a failure on the part of the vendee, to comply with the terms of sale, but simply alleges the difference between the two sales, and as a consequence, of a breach of contract, the liability of defendant to pay the amount of that difference, and is framed on the supposition, that the difference between the two sales is recoverable as on a contract, and not as unliquidated damages,—it was he'd to be bad on demurrer. But if objected to after verdict, might be considered as amended, by striking out all that relates to the re-sale, and the alleged liability of defendant, to avoid the objection.

12. Where no damages are laid in a particular count of the declaration,—the court will intend the general averment of damages at the close of the common counts to apply to it.

13. Where a plea professes to answer the whole of a declaration, and applies to one count only, it will be adjudged bad on demurrer.

Adams *vs.* McMillan, Ex'or, &c.

14. To subject a vendor to loss, for refusing to approve and receive indorsed notes, it must appear not only that the notes were good, but that there was no reasonable cause to reject them, and therefore—

15. Where the declaration states one of the conditions of a contract of sale to have been, that the purchaser was to execute his notes for the purchase money, with *approved* securities, and the plea alleges "that the securities offered by defendant were *good and sufficient* to secure the purchase money of said lands" —it was held bad on demurrer. The plea should also have averred, "that there was no reasonable cause for rejecting them."

16. An averment in a declaration, that, a vendor has power to sell, as executor, is sufficient, without an allegation that the title of vendor's testator is *good.*

17. A bill in chancery is not evidence, in another suit, to prove any fact contained in it; or evidence for any purpose, except to prove that such a bill was filed.

18. What might be the effect of a bill in chancery, regularly *sworn to*, if offered to prove the facts therein contained,—in another suit, between the same parties—*Quere.*

This was an action of trespass on the case, brought in the Circuit court of Dallas county. The action was instituted by McMillan's executor, to recover from the plaintiff in error, the deficiency in price at the re-sale of a tract of land, which had been previously sold to the plaintiff in error.

The declaration, in addition to the common counts, contained four special counts.

The first alleged, that in pursuance of a power vested in plaintiff by the last will and testament of James McMillan, deceased, plaintiff had caused to be put up at public auction, a certain plantation, of which the testa-

Adams *vs.* McMillan, Ex'or, &c.

tor died seized: that the conditions of sale were, that the purchaser should execute notes, with two approved sureties, payable in one and two years, possession not to be given until the terms of sale were complied with; and that in case the purchaser failed to comply with the said conditions, the vendor to be at liberty to re-sell the said lands, and any deficiency, with all charges, to be made good by the vendee. It then averred, that a sale had taken place; that defendant was the highest bidder, and was declared the purchaser of the lands. That in consideration that defendant, as executor, had performed and fulfilled all things in said conditions of sale specified,—he, defendant, had undertaken to perform what devolved upon him as purchaser of the said lands; that though plaintiff was ready and willing to make to defendant, such titles as the testator died seized of, and to deliver possession of said lands, upon defendant's executing his notes payable in one and two years, with two good and sufficient sureties, yet defendant would not make said notes, as aforesaid, with good and sufficient sureties, but refused, unless plaintiff would take as sureties to defendant's notes, certain persons, who were not then good and sufficient sureties.—Whereupon, the plaintiff, as executor, afterwards, after having given notice, again exposed the lands to sale, at auction, when they, on such second sale, sold for less than defendant had agreed on the first sale to pay therefor; the difference between which sales and the costs and charges thereof, the defendant became liable to pay, &c.

The second count alleged similar facts, with the first, and contained a general averment of the refusal of the

Adams *vs.* McMillan, Ex'or, &c.

defendant to comply the terms of the sale, and his consequent liability to pay, as damages, the difference in price between the two sales:—But did not aver, that one of the conditions of the first sale was the right to sell, at the vendee's risk.

The third count was of the same character as the second.

The fourth count, alleged, that plaintiff being empowered, as executor, to sell the lands of his testator, sold to defendant the lands, on a credit of one and two years, for which defendant was to execute notes, for the purchase money, with two approved sureties, before possession was to be delivered: that thereupon defendant promised to fulfil his agreement, in consideration that plaintiff had performed what devolved upon him, under the contract of sale: that plaintiff had always been ready and willing to perform his part of the contract, yet defendant refused to execute the notes, payable in one and two years, with two good and approved sureties for the purchase money, and thereby discharged plaintiff from all further performance on his part, &c.— No damages were laid in this count.

To these counts, were added the common counts, for goods sold and delivered—for money lent—for money had and received—*insimul computassent*—and that defendant had faithfully promised to pay the same,—with the usual conclusion.

To the declaration, defendant filed a demurrer to each count separately.

Defendant also plead the following pleas:

1. Non assumpsit.

2. The statute of frauds.

3. That legal notice was not given by the said execur-tor, of the first sale of said lands.

4. That legal notice was not given of the second sale of said lands, and

5. That the securities offered by defendant were good and sufficient to secure the purchase money of said lands.

To the first and second pleas, there were replications and issues taken, and to the third, fourth and fifth pleas, demurrers were filed, and joinders in demurrer.

The demurrers to the several counts of the declaration were overruled by the court, and the demurrers to the third, fourth and fifth pleas of defendant were sustained ; and a jury being impannelled, to try the issues joined on the first and second pleas of defendant, found for the plaintiff, and assessed his damages at four thousand nine hundred and twelve dollars, and sixty cents.

The bill of exceptions stated, that on the trial of the case, the plaintiff offered as evidence, the bill of sales of the auction of the lands mentioned in the declaration, which bill of sales was not signed by the auctioneer or his clerk, nor by either the plaintiff or defendant,—*to* prove the terms of the sale, the conditions of the same, and the price at which it was sold. He further offered in evidence, a bill in chancery, filed by defendant, Adams, for a specific performance of the contract of sale against plaintiff, which bill in chancery, with the exhibits, were made part of the bill of exceptions, and in which bill in chancery, the defendant Adams admitted a purchase of the lands by himself, but represented the terms and

Adams *vs.* McMillan, Ex'or, &c.

conditions of the sale of said lands, as "publicly proclaimed and made known by said plaintiff on the day of sale." The plaintiff, further to prove the terms and conditions of sale, and a sufficient signing by defendant to charge him thereby, introduced a letter written by defendant to plaintiff, subsequent to the sale, which letter was in the words and figures following, viz :

"Athens, March 12th, 1836.

"Mr. Drury McMillan, executor of the estate of James McMillan, deceased :

"Dear Sir—My illness prevents my coming to make a tender of my notes and securities, in compliance with the sale of lands which I purchased of the estate of James McMillan, deceased, on the eleventh day of January last—being the highest bidder for the same. Such being my situation, I make my son, John D. Adams, my lawful agent, to make a tender of my notes and securities, and authorise him to take possession of said land. The land that I, through my agent, John D. Adams, demand possession of, is the land bid off on the above mentioned day, being the land lying on the Alabama river, occupied by the above named James McMillan, at the time of his death, containing six hundred and forty acres, more or less. You will much oblige me by taking my notes and securities, which my agent, John D. Adams, will present you, and give him complete possession of the land and premises, together with the appurtenances thereunto belonging.

"Yours, respectfully,

B. Adams."

---

---

All the evidence in relation to the terms and conditions of sale, and the signing of the defendant or his agent being parol, the defendant moved the court to charge the jury, that the evidence in the cause was insufficient to take the same out of the statute of frauds, and that there was in fact no legal signing by the defendant, or any other person, for him, upon which to charge him. This charge the court refused to give; to which defendant excepted, &c.

It was in this court assigned in error—

1. The court below erred in overruling the demurrer to each count of the declaration;

2. The said court erred in sustaining the demurrer to the fifth plea of the defendant in said court;

3. The said court erred in refusing to give the instructions to the jury, for which the defendant in said court asked, as the bill of exceptions shows.

*Hopkins & Parsons*, for plaintiff in error.
*J. B. Clarke*, contra.

ORMOND, J.—The principal question arising in this case, on the statute of frauds, is one which demands, and has received from us, the most attentive consideration. Eminent judges, both in England and in this country, have lamented that the plain letter of the statute has ever been departed from. It is now, however, settled, that a writing, no matter what may be its particular form, will be a sufficient memorandum or note in writing, as required by the statute; provided it contain the essential terms of the contract, expressed with such cer-

Adams vs. McMillan, Ex'or, &c.

tainty, that they may be understood from the instrument itself, or from some other writing to which it refers, without recourse to parol proof, and be signed by the party to be charged thereby.

In examining this question, we will proceed in the order in which the case was considered by counsel; and

1st. As to the bill of sales of the auctioneer of the lands, which was offered in evidence in the court below, as such a memorandum or note in writing, as the statute requires.

There was formerly considerable difference of opinion, whether auction sales of land were within the statute of frauds, and whether the signing of the name of the purchaser, by the auctioneer, was a sufficient signing within the statute. It is now, however, well settled, both in England and the United States, that the auctioneer is the agent of the purchaser, either of lands or goods at auction, to sign a contract for him as the highest bidder; and his writing the name of the purchaser on the memorandum of sale, immediately on receiving the bid, and knocking down the hammer, is a sufficient signing of the contract within the statute of frauds—(See 4 Johns. Ch. Rep. 659;) Cleaus vs Foss, 4 Greenleaf, 1.

The bill of exception states, "that the plaintiff offered in evidence, the bill of sales of the auction of the lands, in the declaration mentioned, which bill of sales was *not signed* by the *auctioneer* or his clerk, nor by either the *plaintiff* or *defendant*, to prove the terms of the sale, as well as to prove the conditions of the same, and the price at which it sold.

7 P. 11

It is contended by the counsel for the defendant in error, that this court must understand the expressions used in the bill of exception, to mean that the paper was not subscribed at the usual place of signing instruments, but that the name of the plaintiff in error may have been inserted by the auctioneer, opposite the entry of the land, and the price at which it was bid off. If the paper were in fact signed by the purchaser of the lands, (the plaintiff in error,) or by his agent, in any part of it, it has been repeatedly held that it would be a sufficient signing within the statute; but the bill of exception expressly states that it was *not signed* by either the plaintiff or defendant, the auctioneer or his clerk. The instrument is not set out in the bill of exceptions, and we cannot therefore say, whether if it had been signed so as to charge the party under the statute of frauds, it contained the other qualities which would be necessary to make it such a memorandum or note in writing, as the statute requires. Not being signed, it cannot, of itself, have any influence in the decision of the cause.

We come next to the examination of the letter of the plaintiff in error, relied on as a memorandum or note in writing, of the contract. This letter is signed by the party intended to be charged, and contains a full and complete statement of the whole contract, for the purchase of the lands at auction, with the exception, that instead of describing the land by metes and bounds, or by its designation in the land office according to the survey of the United States,—it is described as "the land lying on the Alabama river, occupied by the above named James McMillan, at the time of his death; con-

Adams *vs.* McMillan, Ex'or, &c.

taining six hundred and forty acres, more or less;" and is entirely silent as to the *price* to be given for the land, or the amount for which it was bid off. This letter, admitting that it contains a sufficient description of the land intended to be purchased, is totally deficient, in not stating the price which was to be given for it. The purchase money is at least as important a part of the contract as any other. Perhaps there would be more danger of perjury, from allowing parol proof to be given of this, than any other constituent of the contract; yet the letter contains no statement of the price of the land, nor does it refer to any other writing which does. Perhaps it might be said, that the notes referred to in the letter, which had been executed by the plaintiff in error, and his sureties, would show the amount to be given for the land. Admitting that to be so, it does not appear from the bill of exceptions, that they were offered in evidence, or relied on in the court below; and as they were not accepted by the defendant in error, the probability is, they were destroyed—at all events, they are not now before us.

In Blagden vs Bradbear, (12 Vesey, 469,) Sir Wm. Grant says: " In opposition to the specific performance prayed by this bill, the statute of frauds is insisted on. The plaintiff endeavors to repel that defence by contending in the alternative, either that the auctioneer's receipt is a sufficient agreement in writing, or that an agreement in writing is not necessary, as the provisions of the statute do not affect sales by auction. The proposition, that the auctioneer's receipt may be a note or memorandum of an agreement within the statute, is not denied; but for

that purpose, the receipt must contain in itself, or by reference to something else, must show what the agreement is. In this instance, one very material particular, the *price*, does not appear on the receipt; for the amount of the deposit, unless we know the proportion it bears to the price, does not show what the price is; and the receipt contains no reference to the conditions of the sale, to entitle us to look at them for terms."

So in this case, the letter does not contain the price to be given for the land,—nor does it refer to any other writing which does, unless it be the notes, which are not before us. It is, therefore, not a sufficient memorandum or note in writing, to satisfy the statute— See also on this head, (11 East, 142;) Lrydell vs Drummond; Clerk vs Wright, (1 Atkin's, 12;) Ross vs Cunningham, (11 Vesey, jr. 550;) Parkhurst vs Van Courtlandt, (1 John. Ch. Rep. 273;) Coles vs Trecothick, (9 Vesey, 250;) Wain vs Walters, (5 East R. 10;) Morley vs Brothley, (3 Bingham R. 107.)

We proceed to the examination of the bill in chancery, filed by the plaintiff in error, for a specific performance of the alleged contract, for the sale and purchase of the lands. The bill recites, with great particularity, all the particulars of the sale, the time at which it took place, the description of the land, the price to be given for it, and the credit on which it was sold; and demands a specific performance. It does not appear from the bill of exceptions, whether the defendant answered the bill, or what disposition was made of it: this, however, is unimportant, in the view we take of this part of the case. If the bill in chancery can be received in evi-

Adams vs. McMillan, Ex'or, &c.

dence, there can be no doubt that it will satisfy the demands of the statute. But we are of opinion, that a bill in chancery is not evidence in another suit, to prove any fact contained in it, or evidence for any purpose, except to prove the fact, that such a bill was filed. Anciently, it seems that bills in chancery were evidence of the facts and allegations they contained—as appears from the cases reported in Buller's Nisi Prius, 235; but in more modern times, they seem to have been considered as the mere suggestions of counsel, and therefore not evidence of any fact alleged in them, between the same parties in any other suit.

In Doe, on the demise of Bowerman against Syborne, (7 Term. R. 1,) a bill in chancery was offered in evidence, to prove a fact therein alleged; but Lord Kenyon "rejected the evidence, on the ground that a bill in chancery was not evidence of any fact therein contained, but was to be taken as the suggestions of counsel."

On a motion for a new trial, in the Court of King's Bench, a distinction was attempted to be taken between facts stated by way of inducement in a bill in equity, and such matter whereon the plaintiff founds his prayer for relief, as was that case. But the court determined, that "a bill in chancery is never admitted in evidence, further than to show that such a bill did exist, and that certain facts were in issue, in order to let in the answer or the depositions." In the case of Taylor vs Cole, his Lordship held the same doctrine; and finally, in the Banbury Peerage case, it was determined by all the judges, "that generally speaking, a bill in chancery cannot be read in evidence to prove any facts, either alleged

or denied. in such bill; but whether any possible case might be put, which would form an exception to such general rule, the judges would not undertake to say"— (2 Selwyn's N. P. 684.)

What would be the effect of a bill in chancery, regularly *sworn to*, if offered to prove the facts therein contained, in another suit between the same parties;— as this bill is not sworn to, it is not necessary now to decide.

From this examination, it appears that neither of the instruments offered in evidence, show a sufficient compliance with the statute of frauds, to constitute a binding contract for the sale of lands, when, as in this case, the statute is pleaded. It was, however, contended, that although the auction sale bill. nor the letter, taken singly, might be evidence of a contract for the sale of lands under the statute; yet, taken together, they would be sufficient. Conceding that to be the fact, it is very clear, that unless there is a direct reference in one to the other, so as, in effect, to embody in itself the paper referred to; without the aid of parol proof to effect such union, they cannot be considered together. This, the authorities already cited, will abundantly show.

We will now examine the pleadings in the case. The four first counts in the declaration are special, and to each of them, a demurrer was filed and overruled by the court. The first count, in substance, recites, that the executor had power, under the will, to sell the lands of his testator,—that he advertised and sold certain lands of his testator, on the following conditions:

1st. On a credit of one and two years;

Adams *vs.* McMillan, Ex'or, &c.

2d. Payment to be secured by notes, with two approved sureties;

3d. Possession not to be delivered, until the terms of the sale were complied with;

4th. A power of re-sale, if the terms of the sale were not complied with.

The count then proceeds to state, that the plaintiff in error became the purchaser, at a price named;—that the defendant offered to convey the land, on the execution of the notes with surety;—that the plaintiff failed to comply, by not tendering good and sufficient security; whereupon, the defendant in error re-sold the land, at a less price than the first sale, and claims as damages, for the breach of contract, the difference between the two sales.

The objection urged against this count is, that there is no allegation that the title of the vendor's testator was good. We do not consider that this allegation was necessary. It is averred, that the defendant had power to sell as executor: This averment is sufficient.

It is true, that if the title to the lands be defective, it would be a sufficient excuse for the purchaser in refusing to complete the purchase; but it is not necessary for the executor to go further than to show that he was lawfully authorised to sell under the will of his testator—(See 4 Greenleaf's R.)

The second and third counts are, in substance, the same as the first, omitting the condition of the power to re-sell, and breach assigned as in the first count. As this count does not allege the power of re-sale, as one of the conditions of the contract of sale, it becomes neces-

sary to enquire whether the vendor, when the vendee refuses to accept a conveyance and pay the purchase money, has, as an incident of the breach of contract, the power to re-sell the lands, and charge the vendee the difference between the two sales.

When the right to re-sell lands, for a failure to comply with the contract, is one of the conditions of the sale, the difference between the two sales, is the measure of damages agreed on by the parties for a failure to perform the contract, and is in the nature of stipulated damages. But if no such condition be entered into, as one of the terms of the sale, the vendor, upon a breach of the contract, would certainly be entitled to recover such damages as he had sustained by the violation of the contract of sale; and we think the difference between the price at which the land was first bid off, and the price at the second sale, would afford a good criterion of the damages sustained by the vendor; not, however, as binding on the jury, but as fit and proper testimony to be received by them as a medium of coming to a correct conclusion. It would be necessary, however, that the second sale, as well as the first, should be conducted with fairness, and no means be resorted to which would impair the value of the land in the estimation of the public. This has been held to be the law in relation to personal property, and we can see no reason why it should not be applied to sales of lands. In the case of Girard vs Taggert, (5 Sergeant & Rawle,) a quantity of teas were sold at public auction, on a credit; the purchaser afterwards refusing to comply with his contract, the teas were re-sold at a loss, and this action was

Adams vs. McMillan, Ex'or, &c.

brought to recover damages for the breach of the contract. In the course of his opinion, Chief Justice Tilghman says, "when Taggart refused to accept the goods, the plaintiff might have kept them without a re-sale, and brought suit for the damage; but without a re-sale, it would have been difficult to ascertain the amount of damage. For this purpose, a re-sale has been the usual practice, and it was sanctioned by this court, in the case of Adams vs Minnich. The jury, however, were told that they were not bound by this mode of estimation, if they could find another more agreeable to truth"—(See also 5 Johnson's R. 395.)

It seems to us, that the principle decided in these cases, apply with equal force to a sale of lands. In the case of the school commissioners vs James G. Aikin, (5 Porter R. 169,) this court expressed a strong opinion to the same effect. In Seton vs Slade, (7 Vesey, jr. 275,) Lord Eldon, commenting on the effect of a clause of re-sale, in the conditions of a sale of real estate, uses this language: "That clause expresses little more than would be the legal effect, if that was not inserted."—(See also 4 Greenleaf, 2.)

With this exposition of the law, let us return to the second and third counts. They do not aver, as part of the contract of sale, a condition that the lands should be re-sold, if the purchaser did not comply with his contract; and yet the counts are both framed on the supposition, that the difference between the two sales of the land, is the sum to be recovered. Thus, they both allege the difference between the two sales, and as a consequence, of the breach of contract, the liability of the defendant to pay

7 P. 12

the sum of money which constituted the difference between the two sales. The damages are laid in the amount of this difference.

These counts are bad on demurrer. They are framed on the supposition, that the difference between the two sales of the land, is recoverable as on a contract, instead of unliquidated damages. If the objection were made after verdict, the counts might be considered as amende, by stiking out all that relates to the re-sale of the land, and the alleged liability to pay that sum of money; but this cannot be done on demurrer.

The fourth count is good. It is true, that no damages are laid in the count itself, but the court will intend the general averment of damage at the close of the common counts, to apply to this count.

It only remains to consider the fifth plea; which was demurred to by the plaintiff below. The plea is in these words: "That the securities offered by defendant were good and sufficient to secure the purchase money of said lands." The record states that the plea was taken, in short, by consent. Construing this consent to mean, that these are the averments of the plea, and that all matters of form are waived, we still think the plea not good. In the first place, the plea professes to answer the whole declaration, and is but an answer to one count, but if this difficulty were surmounted, we think the plea defective in substance. The contract alleged is, that the purchaser (the defendant below) was to execute his notes for the purchase money, with two approved sureties. Now it might be, that the sureties were, in the language of the plea, good and sufficient to

Adams *vs.* McMillan, Ex'or, &c.

secure the purchase money of the lands, and yet the executor be justified in rejecting them. They might come from a distance, and be unknown to him; or there might be a difference of opinion as to their present, or continuing ability, to meet a demand of that amount. In a word, though solvent, and considered good for the amount to be secured, still, they might be such persons, as under all the circumstances of the case, a prudent, discreet man, ought not to have accepted.

We are satisfied with the rule, as laid down by Chief Justice Savage, in the case of Hicks vs Whitmore, (12 Wendell, 551,) in a case similar to this. "The notes must be such, as the party who is to receive them, approves, or cannot reasonably reject; but to subject a vendor to a loss for refusing to approve and receive endorsed not s, it should appear that the notes were good, and that there was no just cause to doubt their sufficiency." Instead of tendering an issue on the mere fact of the sufficiency of the sureties to secure the purchase money, it should also have been averred, "that there was no reasonable cause for rejecting them." The other pleas are abandoned by the plaintiff in error.

The judgment must be reversed, and the cause remanded for further proceedings, in conformity with this opinion.