## BLANN v. BEAL.

1. In a *qui tam* action against the clerk of the county court for the penalty for issuing a license to marry a female under the age of eighteen years, without the consent of the parent or guardian, the plaintiff is not bound to prove the negative averments of the declaration that no consent to the marriage was given.

2. The record of the consent of the parent or guardian which the clerk is, by the statute, required to make, may be given in evidence by him, to show *prima facie* that consent was given.

3. A memorandum shown to have been made by the father of a child, of the time of its birth, would, after his death, be evidence of the date of its birth, as a declaration *ante litem motam ;* but not if the father were living and able to testify.

4. If the father by bringing a suit, in which it becomes necessary to prove the age of the child, is thereby incapacitated from being a witness, he cannot introduce the secondary evidence of his own declaration of the time of its birth, although he may be the only witness who can prove the fact.

ERROR to the Circuit Court of Dallas.

This was an action *qui tam*, by the defendant in error against the plaintiff in error, as clerk of Dallas County Court, for issuing a license to marry a daughter of the defendant, without his consent. The declaration contains two counts. The first count charges, that whereas the said defendant so being said clerk of said county, and by virtue of his office register of the orphans' court of said county, heretofore, to-wit, on the 27th November, 1840, at, &c. did, as said register, grant and issue a marriage license for the celebration of the rites of matrimony between one William C. Beal and Maria T. Beal, daughter of said plaintiff, and an infant at that time, within the age of eighteen years, which said license is in the words and figures following, &c. ; and the said plaintiff further saith, that at the time of issuing said license, the said Maria was an infant within the age of *nineteen* years, at, to-wit, &c.

The second count charges the license to have been issued by the register " without the consent of the said plaintiff, given personally before the said register for the celebration of such marriage, *and* without due proof being made to said register by the oath of at least one credible witness, that said plaintiff, the father

of said Maria, infant as aforesaid, did sign a certificate, giving his consent to the celebration of such marriage, &c."

A demurrer was put in to the entire declaration, which the court overruled.

In the progress of the trial a bill of exceptions was taken, by which it appears that there was no proof adduced, whether the parent or guardian of the female had given his consent to the register, either personally or in writing, or whether proof of such fact was made by any witness before the register; or that such was not the fact, the defendant insisting that the burthen of proving the want of consent, or want of proof thereof, lay upon the plaintiff; but the court ruled, and so instructed the jury, that the burthen of proving the affirmative lay upon the defendant; to which he excepted.

To prove the age of the female, the plaintiff introduced a book entitled the Life of La Fayette. upon a blank leaf of which were some entries relative to the age of the female, and others of the family, tending to prove her under the age of eighteen at the time the license issued. The proof relative to the book, and the entries thereon, was the testimony of a witness, who swore that the entries were made in the hand writing of the plaintiff, that he had seen them some eight years ago, several years after this female was born, and that the book was shewn to him as the family register. The defendant objected to the introduction of this evidence, but the court permitted it to go to the jury; to which the plaintiff excepted.

The jury found for the plaintiff, and the court rendered judgment "that the plaintiff recover from the defendant the said sum of five hundred dollars, the debt in the declaration mentioned, together with his costs, &c."

The assignments of error bring to view,

1. The judgment of the court on the demurrer to the declaration.

2. The several matters set out in the declaration.

3. The judgment rendered by the court.

Evans and Hunter, for plaintiff in error.—The first count is bad, because there are two inconsistent and repugnant allegations in regard to the age of the female, and it is not therefore shown that she was not of the age which dispensed with the

consent of the parent or guardian. The second count is bad, from the use of the word " *and,*" instead of " *or*" in the allegation that no consent was given, thereby imposing on the defendant the proof of both modes of consent. [Gould on P. 154.]

The introduction of the record of births and marriages, was insufficient, because it is not shown that the person making it is dead or beyond the jurisdiction of the court. It cannot be evidence in this cause, as it was made by the plaintiff himself.— [Greenleaf's Ev. 118; 1 Starkie's Ev. 66; Bul. N. P. 255; 3 Starkie, 1100, 1115.

As to the *onus probandi,* it is an established principle, that a public officer discharging a public duty under his official oath, is presumed to do his duty, until the contrary appears. [1 Phil. Ev. 193, 195; Bul. N. P. 258; 19 Johns. 345; Hardin's Rep. 348; 1 Chitty's Crim. L. 558.] The cases cited on the other side from 9 Porter, 326, 633, are unlike this case. That was a statute, making an act unlawful generally, with an exception in favor of those who obtained a license; it is therefore the exception which creates the offence. [2 Russ. on Crimes, 694; 3 B. & Pul. 303; 5 M. & S. 206.]

The fact to be proved is not more within the knowledge of the defendant than the plaint.ff, and therefore, although a negative, must be proved by the former. [Greenleaf Ev. 90.]

G. W. GAYLE, *contra.*—The demurrer to the declaration is to both counts generally, and the second count is certainly good.

The defendant must bring himself within the exception of the statute, by proving the consent; he holds the affirmative of this issue. The cases cited from 9th Porter, 326, 633, are expressly in point; as are also 2 Baily, 151; 1 McCord, 573; 19. Wendell, 363 The proof is more in the power of the defendant than the plaintiff, and must therefore be produced by him. [1 Philips' Ev. 90; 2 Gallison, 285; 1 Johns. 513.] Under the statute of this State [Aik. D.g. 306] the record of the consent is evidence for him.

The record of births was proved to have been received by the family, and admitted to be correct, many years before this suit was instituted, and was therefore correctly admitted.

ORMOND, J.—We do not consider it necessary to examine critically the first count of the declaration, as the demurrer is to

both counts, and the second count is certainly good. The statute prohibits the clerk from issuing a license to marry, when the male is under twenty-one, or the female under eighteen years of age, unless " the consent of the parent or guardian of such infant shall be personally given before the said register, *or* due proof made to him by the oath of at least one credible witness." The declaration alleges that the license was issued by the register, without the consent of the plaintiff, given personally, *and* without due proof being made by the oath of at least one credible witness, that the plaintiff had consented to the marriage.

The objection taken is, that the employment of the copulative conjunction *and*, cast on the defendant the necessity of proving both modes of excuse pointed out in the statute, for issuing a license to marry an infant; but we are clearly of opinion that the objection is untenable. It was necessary for the plaintiff to negative the existence of those facts which would authorize the register to issue a license to marry the daughter of the plaintiff under the age of eighteen years, and this is done as appropriately by the term *and* as *or*. The allegation is, that neither of the facts exists which would authorize the license to issue, and this would certainly be disproved, by showing that either existed, and afford a complete justification to the clerk.

The question upon whom the burthen of proof of negative averments, lies, in cases like the present, appears not to be precisely settled. The point was presented to this court in The State v. Gaus, [9 Porter, 633.] That was an indictment for retailing spirituous liquors, without license, and this court, after remarking upon the contrariety of decision upon the point, held, that it was incumbent on the defendant to make out his excuse by proofs.

It has, however, been repeatedly held, both in England and in this country, that where the charge imports a criminal neglect of duty, the proof of the negative averments must come from the prosecutor, unless a different rule is provided by statutue. [United States v. Hayward, 2 Gallis. 485, 500 ; United States v. Gooding, 12 Wheaton, 460; Commonwealth v. Stow, 1 Mass. 54.] To the same effect are many of the cases cited by the counsel of the plaintiff in error.

Under the influence of this rule of law, so well established, and so reasonable in itself, we would feel ourselves bound to hold that the *onus* was with the plaintiff, if the statute had not as we think

it has, provided a different rule, as the charge here clearly imports a criminal neglect of duty on the part of the clerk. That portion of the statute authorizing marriage licenses to be issued by the register or clerk of the county court, material to this enquiry, is as follows : " and if the male intending to marry, be under the age of twenty one years, or the female under the age of eighteen years, the consent of the parent or guardian of such infant, shall be personally given, before the said register, or due proof made to him by the oath of at least one credible witness, (which oath the said register is hereby authorized to administer) that such parent or guardian did sign a certificate then produced, giving his consent for the celebration of such marriage; whereupon the said register shall *record the consent personally given as aforesaid, and issue a license, and record the same, &c.*"

The consent then, it appears, of the parent or guardian, personally given, or the oath of a credible witness to the genuineness of a written consent, is to be made a record of the court, for no conceivable purpose, as we think, but for the protection of the clerk, and as a record, is doubtless evidence for him, at least *prima facie*, of the facts therein contained. We cannot presume, in the absence of proof, that this record was not made, but must presume, that the clerk performed the duty enjoined on him by the statute. Whether if he neglected to place the facts on record, he would be precluded from making other proof, that the consent was given, we need not now determine.

There is great reason and good sense in this provision of the statute. The parent or guardian are the persons most likely to feel incensed at such improper conduct of the clerk, and the only persons who would probably take such an interest in the matter as to commence an action for the penalty, and if they are incapacitated from doing so by being compelled to be witnesses, the statute would soon become a dead letter. Whilst on the other hand, this view of the statute affords ample protection to the clerk who conforms his conduct to the plain directions of the law.

An exception to the general rule, that hearsay is not evidence, obtains in questions of pedigree, where such testimony is received under certain restrictions. So also, the declaration of a parent as to the time of the birth of a child made *ante litem motam*, are after his death, admissible as evidence, upon the ground, that he must know the fact and has no motive to misrepresent it. [Berk-

ley Peerage case, 4 Camp. 401; Rex v. Erith, 8th East, 542; Good-right v. Moss, Cowp. 591.] In England, this is considered as secondary evidence, and is therefore never admitted when the declarant is alive and can testify. [Rex v. Wedge, 5 Car. & Payne, 298; 3 Starkie on Ev. 1102.]

In the U. States some uncertainty appears to prevail as to the admission of such evidence when the declarant is alive and can testify, but the weight of authority is clearly that the declarant must be dead, or beyond the process of the court. In Elliott v. Piersol, [1 Pet. 337,] the court confine the rule to the declarations of " aged and deceased members of the family." That the declarant must be dead 'before his declarations can be given in evidence, See Chapman v. Chapman 2 Conn. 347; Waldrow v. Tuttle, 4 N. H. 371; Banert v. Day, 3 W. C. C. R. 243; 4 ib. 186; Taylor v. Hawkins, 1 McCord, 165; Leggett and Wooster v. Boyd, 3 Wend. 376.

The admission of this species of evidence has been submitted to from the necessity of the case, and to prevent the failure of justice, which would frequently happen, especially in questions of pedigree, if the testimony of eye witnesses were required to establish remote facts. Upon principle, therefore it must be considered in the nature of secondary evidence; and to authorise its introduction it must be shown that the latter testimony is not within the power of the party to produce. The memorandum offered in evidence in this case, made by the father, of the birth of the child, long anterior to this controversy, would, if he were dead, be evidence of the fact stated in it, but we feel very clear, that both on principle and authority, it cannot be admitted, the father being alive and within the reach of the process of the court. To permit the memorandum to be read as evidence to establish a particular fact, when the person who made it is alive, and competent to establish the fact itself, would be to overturn one of the most salutary rules of evidence—that the best evidence must be produced.

It is also open to observation that it is scarcely possible to suppose that there are not living witnesses, who could establish the fact of the age of the daughter of the plaintiff; and to permit the rule to be relaxed in this case, would be to innovate upon a most important rule without the justification of necessity, which has led to its relaxation in questions of pedigree, to prevent a fail-

ure of justice, from the difficulty, if not impossibility of proving facts of ancient date by living witnesses.

Nor is the case varied because the father who made the memorandum is plaintiff in the cause, and therefore, incompetent to testify in his own behalf. As already stated, it cannot be supposed that he is the only witness who can prove the young lady's age; but if such be the fact, he has voluntarily disabled himself from giving testimony, and cannot ask a relaxation of the rules of evidence, the necessity for which has been caused by his own act. This principle was declared by this court in the case of Bennet v. Robinson, [3 S & P. 240] where the point was elaborately considered and the secondary evidence rejected. For this error, the judgment must be reversed, and the cause remanded.