## ROBINSON v. GARTH.

1. Sales of land by sheriffs, under execution, are within the statute of frauds.
2. The sheriff is the agent of the purchaser, and may sign his name to a memorandum of the particulars of the sale, so as to satisfy the requisition of the statute of frauds—and a statement in writing, made by the sheriff at the time of the sale, describing the land sold by its designation at the land office—the price at which it sold—and the name of the purchaser, is a sufficient memorandum or note in writing, within the statute of frauds.
3. If the purchaser refuse to comply with the terms of the sale, the sheriff may re-sell the land, and bring an action in his own name against the original purchaser, if the land sell for less than was bid for at the first sale, for the breach of his contract—and will be liable for the amount so recovered in his official capacity, to those entitled to the proceeds.
4. In an action brought by the sheriff, after a re-sale, the memorandum of the original sale made by himself, will not be competent evidence to establish the fact that such sale was made.

Error to the Circuit Court of Morgan.

Robinson v. Garth.

The action was brought by the plaintiff in error, as sheriff of Madison, to recover from the defendant in error the difference between the sum bid by him for several tracts of land, sold under execution, and the price for which they were subsequently sold on his refusing to complete the purchase.

Upon the trial, the plaintiff proved that, as sheriff of Madison county, he exposed to sale six parcels of land, as the property of John Blevins, under and by virtue of executions against him, having duly advertised the sale. That at the sale, the defendant bid the sums mentioned in the declaration, which was the last and highest bid; and that the land was knocked down to him, and that as each tract was knocked down, he made an entry of the same.

The plaintiff then offered in evidence a small memorandum book, containing an entry in the words and figures following:

" Sales of John Blevins' land, sold at sheriff's sale on Monday the 1st day of August, 1842; to whom sold; and at what price land sold.

The southwest 1-4 of section 30, township 4, range 2, east—Jesse W. Garth—$510.

Southeast 1-4 of section 24, township 4, range 1, east—Jesse W. Garth—$830.

Southeast 1-4 of section 19, township 4, range 2, east—Jesse W. Garth—$425.

Southwest 1-4 of section 19, township 4, range 2, east—Jesse W. Garth—$1100.

Northeast 1-4 of section 30, township 4, range 2, east—Jesse W. Garth—$340.

Southeast 1-4 of section 30, township 4, range 2, east—Jesse W. Garth—$335.

30 per cent. discount on specie—$3,540 00."

The plaintiff proved that the entry was in his hand writing, but the witness could not say whether the entry was the same which was made when the land was knocked down. That about an hour after the sale, the witness, and plaintiff and defendant were all in a room together, conversing about the sale; that the plaintiff produced the memorandum book—that there was then no disagreement about the purchase, but both parties spoke of it as if it was to be performed.

The plaintiff then produced a deed from the plaintiff, as sheriff,

to the defendant for the lands so sold, dated 1st August, 1842, on the back of which was the following memorandum:

"I, Jesse W. Garth, acknowledge the presentation of the within deed, and waive all formality in the matter.    August 27, 1842.

                                        J. W. GARTH.

    Test, ABNER TATE."

He also proved by said Tate, that the defendant, at the same time, said that the money, owing by him for said lands, must be paid; that the Bank at Decatur was to have furnished it, but had not as yet done so. The plaintiff also proved the judgments under which the sale was made; that the sale was made by virtue of executions then in the hands of the sheriff; the tender of a deed; and re-sale of the lands, as stated in the declaration.

Whereupon the court charged the jury, that the statute of frauds was an effectual bar to the plaintiff's action upon the evidence; and that the whole, nor any part of it, was sufficient to take the case out of the statute of frauds.

The jury having rendered a verdict for the defendant, and judgment accordingly, the plaintiff prosecutes this writ, and assigns for error the charge of the court.

McCLUNG, S. PARSONS and HOPKINS, for plaintiff in error, contended,

1. That sheriff's sales were not within the statute of frauds; and that if they were, the sheriff's return was a sufficient memorandum in writing. [Nichol v. Ridley, 5 Yerger; 1 Vesey, sen. 221; Roberts on Frauds, 114, note 57.]

2. That the memorandum made by the plaintiff was sufficient to take the case out of the statute, as he is the agent of both parties, and the memorandum is evidence for him in a suit brought in his own name. [7 S. &. R. 369; 7 Cowen, 310; 2 Caines, 60; 2 Johns. 284; 14 id. 48; 8 id. 520; 7 Porter, 73; 1 Howard, 210; 2 Taunton, 38; 4 id. 209; 3 V. & B. 57; 7 Leigh, 165; 24 Eng. Com. Law, 97.]

3. The recognition of the memorandum of the sale by the purchaser, when it was shown to him, is sufficient to bind him; and slight proof of such subsequent assent will suffice. [Paley on Agency, 145; Story on Agency, 245; Theo. on P. & S. 20; 8 B. & C. 448; 2 M. & R. 564; 5 Esp. N. P. C. 190; 1 Camp. 513; 3 id. 447; 4 Bingham, 727; 1 Moore & P. 761.]

4. The deed tendered to the defendant contained the contract in full, and the acknowledgment on the back of it sufficient to take the case out of the statute. [1 Bingham, 9 ; 1 Vesey, sr. 6 ; 1 Wilson, 118 ; 1 B. & P. 238 ; Roberts on Frauds, 124 ; 3 Atkins, 503 ; 9 Vesey, 253, 291 ; 1 Peters, 640 ; 1 H. & G. 139.]

5. The court erred in passing on the sufficiency of the proof. [4 Porter, 321.]

6. The sheriff was authorized to make the re-sale, and hold the defendant responsible for the difference in price. [5 Porter, 169 ; 7 id. 73.]

7. As it respects the right of the plaintiff to introduce his own memorandum to take the case out of the statute, they contended that the case of Fairbrother v. Simons, [5 B. & A..,] in which it was held that, when the auctioneer brought the suit, he could not introduce his own memorandum, was not sustained by the case in 2 Campbell, 203, on which it was founded ; and is of doubtful authority even in England, as it was questioned in the case of Bird v. Boulton, [4 B. & A. 443,] and that on principle, the case could not be sustained.

COOPER, *contra.* Sheriff's sales are within the statute of frauds. [2 Caine's Rep. 61; 2 Johns. Rep. 248; 8 ib. 521; 2 B. & C. 945; 3 S. & P. 411.]

A party to a contract cannot act as the agent of the other party, so as to enable him to sign for the other. [2 Campbell, 203; Paley on Agency, 242; Babbington on Auc. 69. 71; Theo. on P. & S. 226; 2 Chitty's Rep. 205.]

To establish the difference between a levy and sale of goods and lands under a *fi. fa.*, he cited 5 Yerger, 227; 10 id. 328; 4 Hawks, 263; 3 Ohio Rep. 464.]

He further contended, that the sheriff could not maintain this action; but that, if an action would lie, it must be brought in the name of the plaintiff in execution, who alone was injured by the conduct of the purchaser.

ORMOND, J.—The question, whether sales of land, by the sheriff under execution, are within the statute of frauds, is one of great moment, and of some difficulty. The publicity of these sales may remove some of the dangers from perjury to which private sales of land might be subject ; but this is an argument

which would apply with almost equal force to ordinary sales of land by auction, which are confessedly within the statute. There would be some more plausibility in the argument, if the sale by the sheriff, *ipso facto*, divested the title to the land out of the defendant in execution, and vested it in the purchaser; but such is not the fact. The purchaser, at sheriff's sale, acquires no title to the land until he pays for it and obtains the sheriff's deed, which the statute, authorizing the sale of land under execution, directs the sheriff to make, and which, when made, conveys to the purchaser the legal title of the defendant in execution to the land. [Clay's Dig. 205, § 17; 216, § 76.] This is very conclusive to show, that the Legislature did not intend to withdraw sheriffs' sales of land from the operation of the statute of frauds, but that such sales were to be evidenced in the same manner as other sales of land are required to be by that statute. Such has been the decision in other States on a similar statute, as shown by the citations of the defendant in error.

In Adams v. McMillan, [7 Porter, 73,] it was held, after a review of the authorities, that an auctioneer, upon the sale of land, was the agent of the purchaser; and that his writing the name of the purchaser on the memorandum of sale immediately on receiving the bid and knocking down the hammer, is a sufficient signing of the contract within the statute of frauds. The sheriff is certainly as much the agent of the parties in a sale of land under execution, as an auctioneer in an ordinary sale by auction. All the reasoning which applies to the latter, acquires increased force when considered in reference to the former, as the sheriff is not only the agent of the parties, but the accredited officer of the law, acting under the sanction of an oath. Such being the case, we are very clear that the memorandum of the sale offered in evidence, if in fact made by him at the time of the sale, was such a memorandum or note, in writing, of the contract, as would satisfy the statute of frauds. It contains all the necessary constituents of the contract—an accurate description of the land sold, the price to be paid for it, and the name of the purchaser; and would have enabled the purchaser, if, on tendering the money, the sheriff had refused to execute a deed for the land, to enforce a specific performance in equity. This renders it unnecessary that we should consider the effect of the deed, subsequently tendered

by the sheriff as a memorandum, or note in writing, under the statute.

In the case of Adams v. McMillan, [7 Porter, 88,] already referred to, it was held, that, upon the refusal of a purchaser of lands, sold at public auction, to comply with his contract, the vendor had, as an incident of the contract of sale, the right to re-sell the lands by auction—that when the power of re-sale was one of the conditions of the first sale, the difference between the two sales would be the measure of damages. If no such power was reserved at the first sale, then the difference between the two would not be binding on the jury as the measure of damages, but would be fit and proper testimony to be received by them as a means of attaining a correct conclusion, that both sales should be fairly conducted, &c.

As already observed, we are unable to perceive any difference in this respect between sheriffs' sales and other public sales of land at vendue. The decision, therefore, above quoted, applies to this case, and is, in our opinion, in point, as to the right of re-sale. [See, also, School Commissioners v. Aikin, 5 Porter, 169.]

Has the sheriff the right to maintain an action for the breach of this contract? Upon this point of the case, we have felt much difficulty. An auctioneer has such an interest in the article entrusted to him for sale, as will enable him to maintain an action for the purchase money against the purchaser, although the owner of the goods be known. This principle was first asserted in the case of Williams v. Millington, [1 H. B. 81.] The Chief Justice, in the course of his opinion, says: "It is not a true position that two persons cannot bring separate actions for the same cause. The carrier and the owner of goods may each bring actions on a *tort;* the factor and owner may each have actions on a contract." And by the whole court, the action was held to be maintainable. [See, also, Coppin v. Walker, 7 Taunton, 237; and Coppin v. Craig, ib. 243.]

The sheriff, like the auctioneer, has not only an interest in the thing sold and the proceeds to pay his commissions and fees of office, but he has an interest and right to the proceeds of the sale, as the appointed organ of the law for that purpose, to enable him to obey its mandate and bring the proceeds into court. We do not doubt that those for whom the sheriff acts, and who are interested in the money to be recovered, may also maintain the ac-

27

tion; but, in practice, great, if not insurmountable difficulties would be encountered if the action were brought in the name of the plaintiff in execution. It would frequently happen that many persons, as plaintiffs in execution, would be interested in the same funds; and, if not sufficient to satisfy all, the most embarrassing questions would arise in settling priorities of rights, as it would be necessary that each should sue separately. All these difficulties are avoided by considering the sheriff, as in fact he is, a trustee for the benefit of all interested in the fund. The money, when received by him, would be received in virtue of his official character, and for which he would be responsible as for money received by virtue of a sale under execution.

There is still remaining a question of considerable difficulty. It is whether the memorandum of the contract of sale, made by the sheriff, can be offered in evidence, when the action is brought in his name. In Wright v. Danah, [2 Campbell, 203,] the memorandum of the sale, relied on to take the case out of the statute of frauds, was made by the plaintiff, the defendant overlooking him and approving it. Lord Ellenborough held, that the agent must be some third person, and could not be the other contracting party.

In Fairbrother v. Simmons, [5 Barn. & Ald. 333,] the precise question we are now considering was presented, the memorandum being made by the auctioneer, and the suit being in his name. The court held that, although the auctioneer may be considered as the agent and witness of the parties, yet when he sues as one of the contracting parties, he cannot maintain the action by his own testimony.

Some doubt is thrown over these cases by the remarks of the judges in the case of Bird v. Boulter, [4 Barn. & Adol. 443;] but the question was not presented in that case. The action was by the auctioneer, but the memorandum of the sale was made, not by the auctioneer, but by his clerk, who was, by the court, considered as the agent of the purchaser for that purpose. The difficulty which seemed to press upon the court in regard to the cases of Wright v. Danah and Fairbrother v. Simmons, was, that the liability of the purchaser should not depend upon the fact, whether the action was brought by the auctioneer or the owner of the goods; and that is certainly true. But the point under consideration in those cases, as in this, was not whether

Robinson v. Garth.

the defendant was liable, but whether it was competent to establish that liability by the testimony of a party to the record. That is a question about which it is apprehended but little difficulty can be entertained. The sheriff, as plaintiff on the record, was liable for the costs of the suit, and had also a direct interest in the event of the suit, being entitled to a portion of the money sought to be recovered, and, upon well established principles, was incompetent either to testify orally to the jury in support of the interest he represented, or to give evidence of an admission or declaration made by him previous to the suit being brought, having the same object in view.

These principles are so universally recognized, that no doubt whatever could have arisen as to their correctness, but from the fact that the memorandum made by the sheriff would have been competent evidence of the fact of the purchase of the lands by the defendant, if the suit had been in the name of the plaintiff in execution, or of some one having an interest in the proceeds of the sale. Evidence, to be competent, must be so, not only as it regards the subject matter of the suit, but also in reference to the parties on the record. In Blann v. Beal, [5 Ala. 357,] a father brought a suit against the clerk of the county court for issuing a license to marry his daughter, under the age of eighteen years, without his consent. To prove the age of the young lady, he relied on a memorandum made by himself in the family register of births many years before. The court held, that although this memorandum would have been evidence of the facts recited in it, in a suit in which he was not a party, as a declaration *ante litem motam,* by one who knew the fact and had no motive to misrepresent it, that it was not evidence for him in a suit in which he was a party on the record. The principle of that case is the one involved in this, and is conclusive to show that the evidence was inadmissible in this suit.

It results from this examination of the cause, that the charge of the court was, in substance, correct, as the memorandum made by the sheriff was not evidence in this cause to take the case out of the statute of frauds; and the judgment is, therefore, affirmed,