[S. F. No. 1073.  In Bank.—February 25, 1901.]

MARK M. MEHERIN, Assignee, etc., Respondent, v. J. N. SAUNDERS, Constable, etc., et al., Defendants. THOMAS AMBROSE, Appellant.

EXECUTION SALE—CHECK AS PART PAYMENT—STOPPAGE OF PAYMENT—ESTOPPEL OF PURCHASER.—A purchaser at an execution sale, who has given a check in part payment of his bid, the payment of which was stopped by him, is estopped to object that the sale was not for cash alone, but was partly upon credit.

ID.—USUAL SALE—CASH BID—BREACH OF PURCHASER'S PROMISE.—Where the sale was made for cash, as usual, and pursuant to the statutory notice, the purchaser by his bid agreed to pay cash, and his check given and accepted as part payment was in lieu of cash, and the stoppage of payment thereon was a failure on his part to perform his promise to pay cash.

ID.—CERTIFICATE OF SALE—RETURN—ACCOUNTABILITY OF OFFICER—LIABILITY OF PURCHASER.—Where the officer issued and recorded a certificate of sale to the purchaser, and applied the cash actually received in payments upon execution in his hands, and made return of the sale, he thereby made himself accountable to the judgment debtor for the full amount of the purchaser's bid, and it is too late thereafter for the purchaser to deny liability upon his part to pay the sum covered by the check.

ID.—NATURE OF PURCHASER'S LIABILITY—EXPRESS CONTRACT.—The purchaser's liability for the amount of his check is not merely statutory, but is a common-law liability arising out of his express promise to pay, based upon a sufficient consideration.

ID.—RETURN SHOWING SALE FOR FULL AMOUNT—PURCHASER NOT PROTECTED—EVIDENCE ALIUNDE.—The return of the officer showing that the sale was made for the full amount of the bid is not conclusive in favor of the purchaser as against the judgment debtor or his successor in interest that the full amount of the bid was actually paid in cash. The purchaser, not being a party to the action in which the execution was issued, is neither bound by the return nor protected by it; and whether he paid the bid or not is a question to be decided upon evidence *aliunde*.

ID.—PRIOR EXECUTION SALE—CAVEAT EMPTOR.—The rule of *caveat emptor* applies to sales under execution; and the fact that a prior sale of the same real property had been made under another execution is no defense against the amount of the bid made at the second sale, whether the first sale was or was not made under a junior lien. The sale made under the junior lien is properly made of the right of redemption remaining in the judgment debtor.

ID.—RIGHT OF ACTION BY OFFICER—TRUST—RIGHT OF BENEFICIARY TO IN-
TERVENE—REAL PARTY IN INTEREST.—In ordinary cases, the officer
who made the sale is the proper party to bring an action to en-
force payment of the bid; yet he stands in the position of a trus-
tee in respect of the proceeds of sale, for the execution cred-
itors to the extent of their interest, and of the judgment debtor
as to the surplus; and if the judgment debtor is the sole bene-
ficiary in such action, he might intervene and control the action
as the real party in interest.

ID.—SURRENDER OF CHECK BY OFFICER—FAILURE TO SUE—ACTION BY AS-
SIGNEE OF INSOLVENT DEBTOR.—Where the officer surrendered the
check to the purchaser after payment thereof was stopped by
him, and wholly failed and neglected to sue the purchaser, the
assignee in insolvency of the judgment debtor may bring a suit
to prevent the bar of the statute of limitations upon the check,
making the purchaser and the officer parties defendant, and
setting forth all of the facts in the case, showing the equitable
right of the assignee to sustain the action. [McFarland, J.,
Garoutte, J., and Harrison, J., dissenting.]

ID.—PRIOR ACTION UPON OFFICIAL BOND—CREDIT OF AMOUNT COLLECTED—
JUDGMENT FOR RESIDUE.—Where a prior action had been brought by
the assignee in insolvency upon the bond of the officer to en-
force his liability for the amount of the bid in the present ac-
tion by the assignee against the purchaser for nonpayment of
his check given for the bid, the purchaser is properly credited
with the amount collected upon the officer's bond, and judgment
is properly rendered against him for the residue. [Garoutte, J.,
and Harrison, J., dissenting.]

ID.—DUTY OF OFFICER TO COLLECT OR TRANSFER CHECK—EQUITABLE AS-
SIGNMENT OF RIGHT OF ACTION.—It was the duty of the officer either
to collect the check or to transfer it to the judgment debtor or
his assignee if he chose to waive objection thereto as payment.
Never having sued, the officer will be deemed in equity to have
assigned his right of action for nonpayment of the check to the
assignee of the insolvent debtor, who may sue thereupon.

ID.—FAILURE TO DEMAND CHECK—DESTRUCTION WITHOUT KNOWLEDGE OF
ASSIGNEE—RIGHT OF ACTION NOT PREJUDICED.—The failure of the
assignee in insolvency formally to demand the check, which
was surrendered and destroyed before he had knowledge of its
existence, cannot prejudice his right of action grounded upon
the obligation arising out of nonpayment of the check.

ID.—EQUITABLE ASSIGNMENT NOT OBJECTIONABLE—PRIVITY OF CONTRACT.
Neither the officer nor the purchaser has any right to complain
that the right of action is deemed to have been equitably as-
signed to the plaintiff, and in such case the necessary privity of
contract to support the action is worked out by operation of law.
[McFarland, J., Garoutte, J., and Harrison, J., dissenting.]

ID.—BID, WHEN PAYABLE—DEED—OBJECTION BY PURCHASER.—The pur-
chaser at execution sale must pay his bid when the certificate

of sale is delivered, and he gets his deed in due time upon demand of the officer. He cannot object to an action by the assignee in insolvency to enforce a check given upon his bid that the assignee cannot procure the deed of the officer.

ID.—STATUTE OF LIMITATIONS.—The statute of limitations applicable to the suit by the assignee in insolvency to enforce the unpaid amount of the check is four years from the date of the check. [McFarland, J., Garoutte, J., and Harrison, J., dissenting.]

ID.—OFFSET—INDEBTEDNESS OF JUDGMENT DEBTOR—PROOF OF CLAIM IN INSOLVENCY—DIVIDEND—ESTOPPEL.—The purchaser is estopped to claim an offset of indebtedness of the judgment debtor to himself, as against such debtor's assignee in insolvency, in his action for the amount of the unpaid check given upon the execution sale, where he had proved the entire amount of such indebtedness without deduction as a claim against the estate of the insolvent debtor, and had received a dividend upon the full amount.

ID.—COUNTERCLAIM AN EXISTING CAUSE OF ACTION—LOSS OF RIGHT OF ACTION.—A counterclaim, capable of being set off, must be in itself an existing cause of action; but one who has proved his debt in insolvency has lost all right of action thereupon, and is expressly forbidden by section 45 of the Insolvent Act to maintain any suit thereon against the debtor.

APPEAL from a judgment of the Superior Court of Santa Barbara County and from an order denying a new trial. W. B. Cope, Judge.

The facts are stated in the opinion of the court.

A. Morgenthal, for Appellant.

The sale was void because not made for cash and the purchase price was not paid. (*People v. Hays,* 5 Cal. 68; *Askew v. Ebberts,* 22 Cal. 263; Herman on Executions, sec. 221; Murfree on Sheriffs, 2d ed., sec. 993; Code Civ. Proc., sec. 696.) The sheriff's certificate and return of sale is conclusive till set aside. (*Egery v. Buchanan,* 5 Cal. 53; Freeman on Executions, secs. 364, 365; Sewell on Sheriffs, 387; Watson on Sheriffs, 72; Code Civ. Proc., sec. 700.) In actions to recover purchase money, the complaint must aver the tender of a deed. (*Bohall v. Diller,* 41 Cal. 532; *Kelly v. Mack,* 45 Cal. 303.) The action is barred by the statute of limitations. (Code Civ. Proc., sec. 338, subds. 1, 4, sec. 339, subd. 1.) The plaintiff knew that the purchase money had not been paid, and had the means of learn-

ing all the facts. (*Bills v. Silver King Min. Co.*, 106 Cal. 9;
*Vigoreux v. Murphy*, 54 Cal. 346.) There is no privity of con-
tract between the plaintiff and the defendant. Only the sheriff
could maintain the action. (*Armstrong v. Vroman*, 11 Minn.
220.[1])

Grant Jackson, and Mullany, Grant & Cushing, for Respond-
ent.

The privity between the assignee of the insolvent debtor and
the defendant Ambrose was created and established by law.
(Insolvent Act, secs. 17, 18; Stats. 1880, p. 321.) The officer
was the agent of the judgment debtor to the extent of any
surplus. (*Yarborough v. Wood*, 42 Tex. 91[2]; *Wilkins v. Will-
son*, 51 Cal. 212, 215; Herman on Executions, sec. 297; *Arm-
strong v. Vroman*, 11 Minn. 220[3]; *Robinson v. Garth*, 6 Ala.
204.[4]) It was as much the duty of this officer to collect this
balance of nine thousand one hundred and forty-five dollars for
the judgment debtor whose property he sold therefor as it was
to collect the eight hundred and fifty-five dollars for the judg-
ment creditor. (*Cooper v. Galbraith*, 3 Wash. C. C. 546; *Swort-
zell v. Martin*, 16 Iowa, 519; *Conway v. Nolte*, 11 Mo. 74; *Mc-
Knight v. Gordon*, 13 Rich. Eq. 222[5]; *Kilgore v. Peden*, 1 Strob.
18, 19.) And it was the duty of the officer not only to collect
this nine thousand one hundred and forty-five dollars at the
time of the sale, but to then pay it over to the judgment debtor.
(Code Civ. Proc., sec. 691.) The purchaser's liability upon his
bid is contractual, and of a common-law character. (*Armstrong
v. Vroman, supra.*) It is founded on the certificate of sale, and
also on his own check, both of which were in writing and bind-
ing on the purchaser. (Code Civ. Proc., sec. 700; *Foorman v.
Wallace*, 75 Cal. 552; Civ. Code, secs. 3087, 3254; *Robinson v.
Garth, supra; Armstrong v. Vroman, supra; Dawson v. Miller*,
20 Tex. 171.[6]) The cause of action is upon a written contract,
and is not barred, four years not having elapsed from the date
of sale. (Code Civ. Proc., sec. 337.) The rule of *caveat emptor*
applies to judicial sales. (Rorer on Judicial Sales, sec. 57;

[1] 88 Am. Dec. 81, 83.        [4] 41 Am. Dec. 47.
[2] 19 Am. Rep. 44.            [5] 94 Am. Dec. 164.
[3] 88 Am. Dec. 81.            [6] 70 Am. Dec. 380.

*Cameron v. Logan,* 8 Iowa, 434; *Hamsmith v. Espy,* 19 Iowa, 444-46; *Dean v. Morris,* 4 Green (Ia.), 313; *Coyne v. Souther,* 61 Pa. St. 457; *Lang v. Waring,* 25 Ala. 625.[7]) The officer owed the duty to the judgment debtor to collect the balance of the purchase money. (Code Civ. Proc., sec. 691; *Cooper v. Galbraith, supra; Swortzell v. Martin, supra; Conway v. Nolte, supra; McKnight v. Gordon, supra; Kilgore v. Peden, supra.*) The plaintiff is the real party in interest, and is the proper party entitled to recover from Ambrose the balance of the purchase price of the property of plaintiff's assignor; and this is specially so in view of the facts of this case. (*Baker v. Bartol,* 7 Cal. 551; *Western Development Co. v. Emery,* 61 Cal. 611; *Kreutz v. Livingston,* 15 Cal. 344; *Morgan. v. Overman Silver Min. Co.,* 37 Cal. 534; *Daley v. Cunningham,* 60 Cal. 530; *Flint v. Cadenasso,* 64 Cal. 83; Code Civ. Proc., sec. 367.) Ambrose is estopped from claiming a right of setoff. (Insolvent Act, sec. 45; James' Bankrupt Law, sec. 21; Bump on Bankruptcy, 11th ed., 491; *Brown v. Farmers' Bank,* 6 Bush, 198; *Russell v. Owen,* 61 Mo. 185.)

BEATTY, C. J.—This is an action by the assignee of an insolvent corporation to recover from the defendants the unpaid balance of the sum bid by the defendant Ambrose for certain real property of the corporation which was sold under execution by the defendant Saunders. In the trial court Saunders made default, but Ambrose defended the action, and he now appeals from a judgment for the plaintiff and from an order denying his motion for a new trial.

The facts involved in several of the points argued by counsel are somewhat complicated, and may be more conveniently stated in detail as the discussion proceeds, but it will be necessary at the outset to indicate the general nature of the case. The defendant Saunders, a constable, in October, 1891, sold under execution certain real property of the California Steamship Company. Defendant Ambrose was the purchaser and the amount of his bid was ten thousand dollars, of which he paid in cash eight hundred and fifty-five dollars. For the balance of nine thousand one hundred and forty-five dollars he gave Saunders his check on Donahue, Kelly & Co., and received from him a

[7] 60 Am. Dec. 533.

certificate of sale which he thereafter retained. A duplicate certificate was duly recorded by Saunders. After getting his certificate of sale Ambrose stopped payment of his check and it was never paid, nor was any attempt ever made by Saunders to enforce payment. Within twenty days after said sale the steamship company was adjudged an insolvent, and in due course the plaintiff was appointed and qualified as assignee. Saunders having accounted for only eight hundred and fifty-five dollars of the sum bid at the execution sale the plaintiff commenced an action against him and the sureties on his official bond, in which he recovered a judgment against Saunders for the balance of nine thousand one hundred and forty-five dollars, and against his sureties for one thousand dollars, the full penalty of their bond. That judgment was affirmed by this court, and the opinion there delivered (*Meherin v. Saunders,* 110 Cal. 463) states the most important facts involved in the present litigation. On the trial of that action, in June, 1894, the plaintiff learned for the first time of the giving of the check by Ambrose to Saunders for the unpaid balance of his bid, of his subsequent stoppage of payment of the check, and of the redelivery of the check by Saunders to Ambrose, by whom it had been destroyed. On the affirmance of the judgment in *Meherin v. Saunders, supra,* Ambrose paid the one thousand dollars due from the sureties, but nothing more has ever been paid on said judgment. The execution against Saunders was returned unsatisfied, and he was then, and has since continued to be, totally insolvent. In the opinion delivered in *Meherin v. Saunders, supra,* it was intimated that Saunders had a right of action against Ambrose to recover the balance of his bid at the execution sale, as undoubtedly he had, but he never took any steps to enforce payment, and thereupon the plaintiff commenced this action on September 28, 1895, less than a month prior to the date when an action on the check would have been barred by the statute of limitations. The trial court credited the defendants with one thousand dollars, the amount paid by Ambrose on the judgment against the sureties of Saunders, and rendered a judgment in favor of the plaintiff for eight thousand one hundred and forty-five dollars, and interest from October 24, 1891, the date of the execution sale and of Ambrose's check.

On his appeal from the judgment and order denying a new
trial the defendant Ambrose assails both the findings and the
conclusions of the superior court, and also contends that the
complaint fails to state a cause of action.  As to the findings of
fact we think they were in every material respect fully sustained
by the evidence.  The finding that plaintiff was not informed
that Ambrose had paid only eight hundred and fifty-five dollars
on his bid prior to the trial of *Meherin v. Saunders, supra,* is
contrary to the evidence, for it clearly appears that plaintiff
received that information immediately after his appointment as
assignee.  The fact which first came to his knowledge during
the trial of *Meherin v. Saunders, supra,* was not that Ambrose
had failed to pay any more than eight hundred and fifty-five
dollars, but that he had given a check on Donahue, Kelly & Co.
for the balance of his bid, that he had stopped payment of that
check and afterward got it into his possession and destroyed it.
As to this matter alone the findings are contrary to the evidence,
but the facts found and the actual facts are alike immaterial.
In all other particulars there is substantial evidence to support
the findings, though as to some matters there is a sharp con-
flict.

The remaining points urged by appellant will be considered
in their logical order.

1. He contends that the complaint shows that no sale of the
corporation's property was made.  The statute, he says, fur-
nishes the exclusive rule for execution sales, and an essential
part of the rule is that every such sale must be for cash, whereas
this sale was made, at least in part, upon a credit.  This, I think
is an objection to the sale which it does not lie in the mouth
of the appellant to make, even if it were technically sufficient.
But it is not sustained by the allegations of the complaint.
They show that the sale was made, as such sales are usually
made, and in pursuance of the statutory notice.  It was, there-
fore, a sale for cash, and Ambrose, by his bid, agreed to pay
cash.  There was no fault in the mode of conducting the sale,
but merely a failure on the part of the appellant to perform his
promise to pay.  It is true that under the statute (Code Civ.
Proc., sec. 695), the constable upon the refusal of appellant
to pay the full amount of his bid might have resold the prop-
erty, in which case appellant would have been liable for the

costs of the resale, and for any deficiency in the price realized, but the officer was induced by the appellant to forego this course. He accepted a check in lieu of cash upon the implied, if not the express, representation of appellant that it was the equivalent of cash. He issued and recorded a regular certificate of the sale. He applied the cash actually received to the satisfaction of the judgment under which the property was sold and of other judgments, executions upon which he had in his hands. He made his return accordingly and thereby made himself accountable to the steamship company for the full amount of appellant's bid. (*Meherin v. Saunders, supra*.) Under these circumstances it is too late for the appellant to say that there was no liability upon his part to pay the sum covered by his check. Besides, his liability is not a mere statutory liability, if there were any merit in that contention, but is a common-law liability arising out of an express promise to pay based upon a good and valuable consideration.

2. The second proposition of appellant is that the California Steamship Company is concluded by the return of the constable to the effect that the property was sold for the sum of ten thousand dollars. If this proposition were conceded it is difficult to see what bearing it would have on the present controversy, for the plaintiff, so far from contesting that part of the return is insisting upon it and is seeking only to recover the unpaid balance of the price bid. But I suppose the appellant means to claim that the return is conclusive in his favor that he paid the ten thousand dollars in full. If so, the authorities he cites do not sustain his contention. They are to the effect that the return of an officer upon an execution is, with some important exceptions, conclusive upon the parties until vacated. But appellant was not a party to the action in which the execution issued, and is neither bound by the return nor protected by it. Whether he paid the bid or not is a question to be decided upon evidence *aliunde*.

3. The proposition is not distinctly advanced by appellant, but he seems to claim that he incurred no liability by his bid, because without his knowledge the property in question had been previously sold to another purchaser on execution under another judgment against the steamship company. It is true

the property had been sold a few days prior to the sale to appellant, but under a judgment which was a junior lien, so that the appellant by his subsequent purchase obtained the superior title. It would have made no difference, however, if the first sale had been under a prior lien, for the rule of *caveat emptor* applies to execution sales, and there would still have remained a right of redemption in the steamship company after the first sale. As it was, the purchaser at the first sale got only a right to redeem from the second sale, and this fact may account in some measure for the full price bid by the appellant.

4. It is contended that there is no privity of contract between the judgment debtor and the purchaser at the execution sale such as is essential to sustain an action by the former to recover from the latter the unpaid surplus of his bid over and above the amount required to satisfy the execution. Upon this point counsel for respondent are challenged by appellant to cite a case in which a judgment debtor has ever recovered such surplus or balance in the absence of an express agreement between the debtor and purchaser. No case exactly in point is cited in response to this challenge, but the principles which support the position of the respondent are unquestionable.

The right of the officer who conducts the sale to sue for the unpaid purchase money is not disputed, but it is claimed that he, and he alone, can maintain the action. Ordinarily, no doubt, the officer is the proper party to bring the action, for it is only by collecting the full purchase price that he can fulfill the commands of the writ. He stands in the position of a trustee as to the proceeds of the sale for all parties interested, for the execution creditors, to the extent of their interest, and for the judgment debtor as to the surplus. He also has an interest in the fund to the extent of his fees and commissions. For these reasons such an action by the sheriff was sustained by the supreme court of Alabama. (*Robinson v. Garth*, 6 Ala. 204.[8]) But in that case the court said (page 209): "We do not doubt that those for whom the sheriff acts and who are interested in the money to be recovered may also maintain the action," etc. The principle of that decision was that the sheriff being the trustee of an express trust could and ought to sue for the benefit

[8] 41 Am. Dec. 47.

of his *cestuis,* but that his right to sue did not exclude a similar right in the beneficiaries.

In this case the trustee has utterly failed and neglected to sue, and the right of action was about to be barred by the statute when the beneficiary commenced this suit, making the trustee a party defendant and alleging all the facts constituting his equitable right. He shows that the trustee is insolvent; that he has surrendered and permitted the destruction of the written. instrument upon which the action could be most clearly sustained; that the liability of his sureties is exhausted, and, in short, that without action on plaintiff's part, a large portion of the price of his insolvent's land will be irrecoverably lost. It cannot be doubted that if Saunders had sued in his own name and recovered the amount of appellant's check he would have held the proceeds as trustee for plaintiff, and that every cent of it would have been assigned to the plaintiff by any insolvency court having jurisdiction of Saunders' estate to the exclusion of his general creditors. It cannot be doubted that if Saunders had commenced an action in his own name, the interest of plaintiff would have entitled him to intervene and take control of the litigation, upon the ground that he was the real party in interest, and more especially by reason of the insolvency of Saunders. These things being so, I cannot understand why, upon showing the neglect of Saunders to sue, the plaintiff could not commence the action himself, making Saunders a party. The result is that the same parties are before the court that would have been before the court if Saunders had done his duty by commencing the action, and plaintiff had exercised his clear legal right by intervening. All the facts were fully disclosed by the pleadings, and the court was in a position to do full and complete justice in the premises. There is another sufficient answer to the technical objection of want of privity. By section 691 of the Code of Civil Procedure it is made the duty of the officer holding the execution, in the absence of other specific direction of the court, to return to the judgment debtor any excess in the proceeds of the sale over the judgment and accruing costs. In this case there was no specific direction as to the surplus which was exactly represented by appellant's check. This check was not cash and the judgment debtor could not ·

have been compelled to take it. But that objection could have been waived, and if waived it would have been the duty of Saunders, under the statute, to transfer the check. It is, indeed, true that the plaintiff never formally demanded a transfer of the check (he never knew of its existence until it had been surrendered and destroyed), and he never waived his right to the cash, but his present action is founded upon the obligation arising out of the nonpayment of that check, and he is entitled to be treated as the equitable assignee. Equity deems that to be done which ought to be done. Saunders ought to have sued on the check or to have assigned it to the plaintiff so that he could sue. Not having sued himself he will be deemed to have assigned his right of action to plaintiff. Of this view he cannot complain, and still less can the appellant complain. The necessary privity of contract in this case is worked out by operation of law.

5. It is contended that the plaintiff cannot maintain this action because he does not show that he is willing or able to procure for the appellant the constable's deed. To sustain this proposition counsel cites *Bohall v. Diller*, 41 Cal. 532, and similar cases. Such cases have no application here. A purchaser at execution sale must pay when the certificate of sale is delivered. He gets his deed in due course upon demand of the officer. Appellant received his certificate of sale at the date of the sale and the whole amount of his bid was then payable.

6. If we are correct in holding that plaintiff can maintain this action as equitable assignee of plaintiff's check, or as the real party in interest, because of the default of his trustee the plea of the statute of limitations is disposed of. The action was commenced within four years from the date of the check.

7. At the date of the execution sale the California Steamship Company was indebted to the appellant in about the sum of twenty-seven thousand dollars, upon which the appellant had commenced an action and issued attachments which he had caused to be levied on the property which he afterward purchased. The subsequent adjudication of the company's insolvency made within thirty days after the commencement of that suit dissolved the attachment, and appellant thereupon proved up his claim for the full amount in the insolvency court.. This

was done subsequent to his purchase at the execution sale and after he had stopped payment of his check. In proving his claim in the insolvency proceedings he made no deduction on account of the unpaid balance of his bid at the execution sale but asked and obtained the allowance of the whole of his original claim undiminished, and when a dividend was declared by the assignee he claimed and received the sum apportionable to the full amount of his original demands. The dividend was only a fraction over four per cent of the company's indebtedness, however, and the amount still due the appellant is largely in excess of the unpaid portion of his bid at the execution sale. Upon these facts the appellant contends that the trial court erred in refusing to set off his claim upon the insolvent company against the present claim of plaintiff. To this assignment of error the respondent makes three answers: 1. That Ambrose never had a right to set off his claim against the steamship company; 2. That if such right ever existed he waived it at the time he should have exercised it; and 3. That he is estopped to claim a right of setoff by his claim and acceptance of the dividend in the insolvency proceeding on the whole amount of the original indebtedness of the steamship company. I think the position of the respondent must be sustained on every point.

This case presents a question very different from that which arises in the ordinary case of cross-demands or mutual credits. The real question is not whether cross-demands may be compensated by setting off one against the other, but is rather a question whether a creditor of an insolvent can by his unlawful act defeat the clear and undoubted policy of the insolvency laws and give himself a preference over other creditors; whether, in other words, he can against the will of the insolvent debtor, and in violation of his legal rights, secure a preference which could not be secured by their voluntary and concurrent action.

Under the provisions of section 55 of the Insolvent Act it is perfectly clear that if a debtor in contemplation of insolvency should make over to one of his creditors a valuable asset in consideration of the release of his demand—the creditor having reason to know the debtor's condition—the transaction would be set aside as a fraud upon the other creditors. And if this is

so, if the insolvent cannot give a preference when he desires to do so by a voluntary transfer of his property, it certainly must be allowed that the creditor cannot secure the same preference by unlawfully taking or withholding the property, and offering to credit its value. This, however, is precisely what Ambrose is seeking to do in this action. The steamship company did not make a voluntary sale of its property on credit to Ambrose, or to anyone. The property was seized upon by an officer of the law who was empowered to sell enough of it to satisfy his execution, or to sell the whole of it for cash, and after satisfying the execution, to return the surplus to the owner. If this course —the course enjoined by the law—had been pursued, the constable would not have taken Ambrose's check for nine thousand one hundred and forty-five dollars in lieu of cash, but would have taken the cash itself and paid it over to the company, by whom it would have been turned over to its assignee as a part of the fund for the satisfaction of the claims of its general creditors, including Ambrose. By imposing upon the constable, and violating the right of the steamship company to receive the cash, Ambrose seeks to put himself in the attitude of a debtor of the corporation with a right to extinguish his indebtedness by a setoff, dollar for dollar, where other creditors must be content with a modest dividend. To sustain him in this position is to allow him to take advantage of his own wrong and to hold that the policy and plain directions of the law can be defeated by a violation of the law. The doctrine of setoff is pre-eminently an equitable doctrine, and is none the less so by reason of its embodiment in our statutes. Upon a claim of setoff equity will work out the result that would have followed if that had been done which ought to have been done. If Ambrose had paid the full amount of his bid as he ought to have done, the plaintiff as assignee of the insolvent corporation would have had nine thousand one hundred and forty-five dollars to divide evenly between him and the other creditors. The result of this judgment is to bring about exactly that condition, while to allow the claim of setoff which he asserts would be to give him the whole nine thousand one hundred and forty-five dollars and leave the other creditors no part of it.

But even if it were conceded that a right of setoff could exist

under such circumstances, it is certain that the time to exercise it was when Ambrose proved his claim in the insolvency proceedings. If the cross-demands were of such a nature that one compensated the other he had no valid claim for more than the balance. But he claimed and was allowed the whole of his original demands undiminished, and this allowance of his claim was like a similar allowance in probate proceedings, the equivalent of a judgment—a judgment to be paid in due course of administration.

To make this claim and secure its allowance was, therefore, a solemn admission on his part that he had no right to set off the unpaid balance of his bid at the execution sale but that he must discharge that liability in full and content himself with the dividend apportionable to the full amount of his original demands. I think it clear that he was well advised in making this admission and pursuing the course that he did. But whether well or ill advised in this matter he certainly went too far to recede when he claimed and accepted a dividend on the whole amount of his original demands. If the right of setoff existed and the two claims compensated each other he was entitled to a dividend on a balance of only about twenty thousand dollars, but he claimed and accepted a dividend on over twenty-nine thousand dollars; that is to say, about one-third of what he received was money to which he had no right, and it was money of which the other creditors were wrongfully deprived. For the purpose of drawing a dividend in the insolvency proceeding he acts upon the theory that there is no setoff and that the cross-demands are uncompensated. Having in this way appropriated to himself money that on his present theory belonged to other creditors, can he be allowed now to shift his ground and upon a totally inconsistent theory withhold the fund out of which the other creditors would receive a dividend? It is to my mind clear that he cannot. He is estopped.

These views are, I think, amply sustained by authority and even by the letter of our statutes.

A counterclaim capable of being set off in an action must be in itself an existing cause of action. Was appellant's claim against the steamship company an existing cause of action when he sought to avail himself of it as a counterclaim? Section 45

of the Insolvent Act furnishes the answer to this question: "No creditor proving his debt or claim shall be allowed to maintain any suit at law or in equity therefor against the debtor, but shall be deemed to have waived all right of action and suit," etc.

The case of *Brown v. Farmers' Bank*, 6 Bush, 198, is on all fours with this case. I quote the following from the opinion of the court of appeals: "And to the setoff so pleaded the plaintiff filed a reply, setting forth that before he brought this action the defendant had, in the proper proceedings which were pending in bankruptcy, presented and proved and verified for adjudication and allowance against the estate of each of said bankrupts the whole amount of each of said debts, without giving or allowing any credit on either of them for the two hundred dollars and four cents in controversy, and that said debts, having been proved in bankruptcy, were beyond the defendant's control. . . . . In our opinion, proving the entire debts in the proceedings in bankruptcy, without offering to abate the claims by the amount of said deposit, was a waiver of the right to do so, and an election to proceed on said claims alone in the proceedings in bankruptcy; and that the subsequent assertion of part of the same debts by plea of setoff in this action was equivalent to the prosecution of an original suit upon the claims against the prohibition of the bankrupt law."

*Russell v. Owen*, 61 Mo. 186, is a case of the same complexion, and this is from the opinion of the court: "The chief question for determination in this case is, whether a creditor who is making proof of his claim before the register in bankruptcy omits to show that the bankrupt has an unsatisfied claim against him, can, when sued by the assignee for the amount of such unsatisfied and omitted claim plead as a setoff the amount allowed by the register as a balance due to him. The question must receive a reply in the negative. . . . . When a party defendant pleads a setoff, he in effect brings an action for the amount of that setoff, but by presenting and proving his claim before the register, the creditor is to be deemed as waiving all right of action on suit against the bankrupt. It would be clearly contrary, therefore, to the evident intent of the above recited section to allow a creditor to do that indirectly which the law pre-

cludes him from doing directly; to accomplish by way of setoff that which he would be debarred from asserting in a direct action. The same view of this point is taken elsewhere. (*Brown v. Farmers' Bank, supra.*)" (And see notes to section 21 of James' Bankrupt Law; Bump on Bankruptcy, 9th ed., 684, 11th ed., 491.)

The superior court did not err in denying the right of setoff. Judgment and order affirmed.

Van Dyke, J., Temple, J., and Henshaw, J., concurred.

McFARLAND, J., dissenting.—I dissent, and think that the judgment should be reversed. Apart from the very close questions of law which arise in the case, by which, of course, it must be determined, it is proper to remark that it would be a great hardship to compel appellant to pay the large amount of money and interest claimed to be due respondent on the bid at the constable's sale. Appellant had advanced to the California Steamship Company large sums of money—at one time amounting to eighty-six thousand dollars. At the time of the constable's sale the company owed appellant about twenty-eight thousand dollars; he paid eight hundred and fifty-five dollars on his bid; he also paid one thousand dollars on the judgment recovered against the constable and his sureties; he also paid several hundred dollars on a former sale of the same property, and he not only loses all of this, with the exception of a very small percentage coming from the effects of the insolvent corporation, but must now pay, in addition, the amount of the present judgment which is for eleven thousand one hundred and thirty-six dollars and forty-seven cents, and interest. I think that it can be gleaned from the evidence that the bid of ten thousand dollars was understood by the judgment debtor, by the constable, and by the appellant to be fictitious except as to the amount necessary to pay off the judgment lien—eight hundred and fifty-five dollars—which sum appellant paid to the constable; and that the ten thousand dollars was bid with the consent of all parties merely to enhance the apparent value of the property, appellant supposing that it would be deducted from the large amount of indebtedness from the company to

himself.  It is alleged in the complaint that the constable never
demanded payment of the check given him by appellant for
nine thousand one hundred and forty-five dollars.  The judg-
ment debtor, before it went into insolvency, never made any
objection to the nonpayment of the balance of the bid.  Pay-
ment of the check was immediately stopped by notice of ap-
pellant, no demand was ever made on the bank on which it
was drawn for its payment, and the check was destroyed.  No
proceedings were taken under section 695 of the Code of Civil
Procedure to have the property resold.  This action was not
commenced until nearly four years after the date of the bid.
There is no finding as to the actual value of the property, and
no evidence going very directly to that point, but there is evi-
dence tending to show that it had no value approaching the
amount of the bid.  Under these circumstances the appellant
should not be compelled to pay this large sum of money unless
strict law inexorably demands it; and I do not think that there
is such a demand.

As to the law governing the case, without considering the
many other points made by appellant, I will merely say: 1. That
in my opinion there was no privity of contract between the re-
spondent and the appellant as to the alleged cause of action,
and, therefore, respondent cannot maintain this action.  There
are many authorities supporting this view, but it will be suffi-
cient to notice the cases of *Galpin v. Lamb*, 29 Ohio St. 529,
and *Adams v. Adams*, 4 Watts, 160, and the cases referred to·
in the opinions in those cases.  In *Galpin v. Lamb, supra*, the
syllabus, which is a correct statement of the point decided, is
as follows: "A judgment creditor cannot maintain an action
against a purchaser of real estate at sheriff's sale, to recover
damages for the breach of a contract of sale."  Of course, a
judgment debtor is in the same position touching this point as
a judgment creditor.  In the opinion the court say: "The con-
tract of purchase is made with the officer as representing all the
interests involved in the suit in which the judgment or decree
of sale is rendered.  He and the purchaser are the only parties
to the contract of purchase, and he alone can maintain an action
against the purchaser to recover the purchase money.  The
parties to the judgment or decree have different interests and

stand in different relations to the property, some holding the relation of debtor and others that of creditor. But however numerous the parties or diverse their interests the officer represents them all, and none of the parties stand in such relation to the contract of the purchaser as to enable them to maintain an action on it." In *Adams v. Adams, supra,* the syllabus is as follows: "For a breach of contract between a sheriff, and his vendee of land, no action will lie in the name of anyone but the sheriff." In the opinion the court say: "The sheriff, in making the contract of sale with James Adams, was not acting as the agent of the plaintiff, nor yet of anyone else. He is considered the principal himself in such cases, and the legal as well as real party making the contract of sale. Although it be true that he acts in the character of a trustee, yet it must be borne in mind that it is as an officer of the law that he does so, and that it is from the law he derives all his power and authority; and in sales of property made by him as sheriff under this authority, he alone has the right to receive the money arising therefrom, and is responsible for the legal appropriation of it, unless it is brought by him into court for that purpose. It would inevitably produce great confusion and clashing of suits, to permit other persons, besides the sheriff, in their own names to maintain suit against a sheriff's vendee for breaches of their contracts made with him. It would also be inconsistent with every principle of analogy in the law." I have seen no cases where the point was directly involved which are in conflict with the above authorities. 2. Under any view, the action, in my opinion, is barred by the statute of limitations. The alleged action is based upon the bid made by appellant at the sale, and not upon a written instrument, and it cannot be brought within any category of actions not barred in, at least, three years.

GAROUTTE, J., dissenting.—I concur generally in the views of Mr. Justice McFarland, but would add an additional suggestion. Though the concession is opposed to all the authorities, let it be conceded that the constable took this check from Ambrose as agent or trustee of the plaintiff—an act clearly beyond the scope of his authority. Upon this concession, the plaintiff then had either one of two courses open to him. He

could ratify the constable's act and take the check, or he could repudiate it and hold him liable for the money he should have received at the sale. Here plaintiff elected to follow the latter course, and recovered judgment against the constable for the full amount of the unpaid purchase price. Having done so, he lost all rights he may have had to the check, and forever afterward it became the property of the constable.

Plaintiff had no right to sue the constable for the unpaid purchase price, and also claim title to the check. These two remedies were absolutely inconsistent with each other, and the adoption of one was a bar to the prosecution of the other. If the plaintiff had taken an assignment of the check from the constable in the first instance, he could not thereafter have sued the constable for the unpaid purchase price; and having first sued the constable for that purchase price, he never thereafter was entitled to an assignment of the check. Conceding that when the first action was brought he did not know that the check was in existence, still that fact is immaterial, for he did know that the purchase price had not been paid.

The foregoing views we believe to be supported by the language of the principal opinion, wherein it is said: "This check was not cash, and the judgment debtor could not have been compelled to take it. But that objection could have been waived, and if waived it would have been the duty of Saunders under the statute to transfer the check. . . . . Equity deems that to be done which ought to be done. Saunders ought to have sued on the check, or to have assigned it to the plaintiff so that he could sue. Not having sued himself he will be deemed to have assigned his right of action to plaintiff. Of this view he cannot complain, and still less can the appellant complain. The necessary privity of contract in this case is worked out by operation of law." Conceding the foregoing quotation to contain a sound exposition of the law, then the plaintiff, after having brought his action against the constable for the full amount of the purchase price and recovered judgment, would never be declared by the law to be the equitable assignee of the check. It was thereafter the property of the constable, and the plaintiff had no right or title in it. This action cannot be maintained for a moment unless upon the

theory that it is an action upon the check. The statutes of limitation absolutely forbid it. The check being the property of the constable the action must fall.

HARRISON, J., dissenting.—The complaint herein is based solely upon the obligation of the appellant to pay the amount of his bid, and upon the right of the plaintiff as the assignee of the judgment creditor to recover that amount from him. After setting forth the facts showing the capacity in which the plaintiff brings the action, and the circumstances attending the bid, and its nonpayment, it is alleged that the plaintiff is the owner of and entitled to recover the whole amount "due to the defendant Saunders, as such constable, from the defendant Ambrose on said bid," and the court finds as the fact upon which it rendered judgment against the appellant, that the plaintiff is entitled to have and recover the amount "so due and payable to the defendant Saunders, as such constable, from the defendant Saunders on said bid, and now due to this plaintiff, as such assignee in insolvency." The plaintiff's entire cause of action rests, therefore, upon the appellant's refusal to pay the amount of his bid. The complaint is framed upon the theory that the amount bid was due from the appellant to the officer, and that by reason of the officer's neglect and default the plaintiff is entitled to maintain a direct action against the appellant for its recovery. I think it is very clearly shown in the opinion of Mr. Justice McFarland that there is no privity between the officer and the judgment creditor, by which the latter is authorized to maintain an action against the purchaser for the amount of his bid; but if it be conceded that such privity does exist, the creditor can have no greater right of action than could the officer. The plaintiff has no other cause of action against the appellant than such as existed in favor of his assignor, the steamship company, and that company's right of action, if any existed, accrued October 24, 1891, at the time when the appellant purchased the property at the constable's sale. If the plaintiff's right to maintain the action is to be sustained upon the ground that he is the real party in interest, his right of action can be no greater than that of him who conducted the transaction under which he derived his interest and by virtue of which he claims to be the interested party. If

the appellant would not have been liable to Saunders under the facts alleged and found herein, the plaintiff can have no right of recovery against him.

It is very evident that Saunders could not have maintained any action against the appellant for the recovery of the amount of his bid, unless it was commenced within two years after the date of the bid, and it is equally clear upon the facts alleged and shown herein, that at the time the present action was commenced Saunders could not have maintained any action against the appellant upon the check. Not only is it alleged in the complaint that he made no demand for the payment of the check, and that he declined to collect it, but it is also shown that when he received it he inclosed it in an envelope and deposited it in the bank "for safekeeping," and afterward and before the commencement of this action, withdrew it and surrendered it to the appellant. He had the same right to surrender the check to the appellant as he would have had to refuse to receive it at the time of the bid. Having thus voluntarily parted with it, he could not thereafter maintain any action upon it, and his only right of action against the appellant would have been for the recovery of the amount of his bid.

The only reason assigned in the opinion of the chief justice for sustaining the action as against the plea of the statute of limitations, is that the plaintiff is the equitable assignee of the check. No adjudicated case is cited in support of this proposition, nor are any rules applicable to the principles governing equitable assignments invoked in its support. The action herein is not upon the check, and the allegations in the complaint, as well as the evidence offered at the trial and the findings of the court in reference thereto, do not assert any right in the plaintiff by virtue of the check, but are clearly evidentiary statements of the transaction, inserted merely for the purpose of showing that the appellant had not paid the full amount of his bid. Not only does the complaint fail to set forth any right of action upon the check, but as if with the intention not to do so, avoids any claim to the check by reason of its having been received by the officer. After alleging that he accepted it "in lieu of the balance of the purchase price" bid by the ap-

pellant, the complaint sets forth that the officer deposited it in the bank of Lompoc, "where, as this plaintiff is informed and believes, the said check has ever since been and is now deposited and remains." Although it was shown at the trial that the check had been withdrawn from the bank and surrendered to the appellant before the commencement of the present action, the above allegation shows that, although the plaintiff then believed that it still remained in the custody of the bank, he made no effort to get possession of it, or to make it the basis of his action, but relies upon the liability of the appellant for the amount of the purchase money, and thus destroys his right to be regarded as the equitable assignee of the check. An officer making a sale has no right to accept anything but money from the bidder, or to give credit to the purchaser. If he does so, however, he acts in his individual capacity, and not as an officer, and is liable in his individual capacity equally as if he had in fact received the money. The judgment creditor may affirm the act of the officer in accepting the check or other obligation of the purchaser, instead of money, and thus be estopped from questioning the sufficiency or correctness of the officer's act, but unless he does so accept it, he does not acquire any right or title thereto. To say that because he might have accepted the check, it may be assumed that he did accept it, upon the ground that equity deems that to be done which ought to be done—especially when he makes no claim that he was willing to accept it—is to apply this rule in a manner for which I think no authority can be found. The act of the plaintiff in bringing the former action against the officer, in which he charged him with having received the money upon the bid, and obtained judgment therefor, is conclusive against any claim that the plaintiff waived the officer's obligation to receive money upon the bid, and that he was willing to accept the check in its stead. His election of remedies at that time precludes him from maintaining the present action, as is shown in the opinion of Mr. Justice Garoutte.

If the remedy provided in section 695 of the Code of Civil Procedure, in case the purchaser refuses to pay the amount bid by him, is not exclusive, the officer's right of action is limited to a suit for the recovery of the amount of the bid.

Such an action is a pure common-law action resting upon the common-law liability of the purchaser upon his bid, and presents no room for invoking the principles of equity, and the rights of the creditor derived by virtue of his privity with the officer can be no greater than those of the officer, but whether the obligation of the appellant is by virtue of the statute, or rests upon his common-law liability, is immaterial. His obligation is not "founded" upon an instrument in writing, and any action to enforce such obligation must be commenced within two years after his liability accrued. (*Chipman v. Morrill*, 20 Cal. 130; *McCarthy v. Mt. Tecarte Land etc. Co.*, 111 Cal. 328; *Thomas v. Pacific Beach Co.*, 115 Cal. 136.) As the present action was not commenced until more than two years after the right of action accrued, the defendant's plea of the statute of limitations should have been sustained.

Rehearing denied.