[Civ. No. 5315.   Third Appellate District.—May 17, 1935.]

M. C. MITCHELL, Appellant, v. ALPHA HARDWARE & SUPPLY COMPANY (a Corporation) et al., Respondents.

Sherman & Peters for Appellant.

W. E. Wright and Lynn Kelly for Respondents.

PLUMMER, J.—The plaintiff in his complaint sets forth a number of causes of action. They involve the validity of a

sheriff's sale of certain real property known as the "Ruby Mines", situate in Sierra County, and couples therewith a count asking for the return of between $3,500 and $4,000 alleged to be the excessive amount which the plaintiff was compelled to pay in order to secure a redemption of the property from the sale thereof made by the sheriff.

The record shows that preceding the sale of the property five judgments had been obtained against the Ruby Mining Company, and executions thereon issued and placed in the hands of the sheriff of Sierra County. Of these executions the one based upon the judgment obtained by the Alpha Hardware & Supply Company appears to have had priority, and was for the sum of $2,119.15, which with the costs added amounted to the sum of $2,776.97.

At the sale of the mining property the Alpha Hardware & Supply Company bid the sum of $6,478.42, being the aggregate amount due upon all five of the judgments, on which judgments, executions had been placed in the hands of the sheriff as we have just stated. No money was actually paid to the sheriff, save and except his costs. The four judgments other than those based upon the indebtedness to the Alpha Hardware & Supply Company had been, previous to the sale, assigned by the respective judgment-holders to the Alpha Hardware & Supply Company. Following the sale, instead of cash in the amount of the bid being paid over to the sheriff, his costs were advanced, and then receipts given for the amount of the respective judgments which, as we have said, equaled the bid. Thereupon, satisfactions of the five judgments were entered, and after the expiration of the time for redemption, a deed to the property sold under execution was delivered to the defendant Alpha Hardware & Supply Company.

The plaintiff in this action, some time after the sale, succeeded to the title of the Ruby Mining Company, to the mining property involved in this action, and even though the time for redemption had expired, obtained from the defendant Alpha Hardware & Supply Company, an extension of time within which to make redemption, and thereafter did tender and pay to the Alpha Hardware & Supply Company for the redemption of the mining properties, the sum of $7,338.22. This sum included costs, interest and penalties as provided by law.

A number of technical objections to the sale and to the proceeding are advanced by the appellant, to wit: That the notice of sale is misleading; that the property owned by the Ruby Mining Company was sold *en masse* instead of being sold in separate properties; that the money in excess of the judgment obtained by the Alpha Hardware & Supply Company, amounting to $3,701.45, should have been paid over in cash.

There is some testimony in the record that one of the attorneys for the Alpha Hardware & Supply Company, after the sale, stated to the sheriff that he was prepared to pay over the amount of the bid. However, no cash appears to have been tendered, nor was any check for the amount of the bid actually presented to the sheriff. The payment of the bid was made in the manner which we have hereinbefore stated.

We find no allegation in the complaint, and no testimony in the record indicating any fraud in the sale conducted by the sheriff, nor do we find anything in the record indicating that the amount of the bid was not adequate, or that the properties were not sold for all that they were reasonably worth. Neither is there anything in the complaint or in the record indicating that any errors made by the sheriff in his notice of sale misled any purchasers, or prevented a fair and honest sale of the properties. The notice indicating the properties to be sold referred to the judgment, and in some part of the notice mentioned Nevada instead of Sierra County. There being nothing in the record and nothing in the complaint indicating that the notice was misleading, prejudicial or injurious, we think the rule set forth in the case of *Frink* v. *Roe*, 70 Cal. 296 [11 Pac. 820], applicable, to wit: ''A failure to give proper notice of sale of real property under execution does not invalidate the sale.''

The record shows that the executions were all in the hands of the sheriff, subject to inspection by any intending purchaser, and that a transcript of the judgment under which the property was sold was recorded in the office of the county recorder of Sierra County, and had been of record for a number of months prior to the sale. The record shows that the property sold had been operated as one property, and while it consisted of three parcels, it appears to have been only known as one property. No request was made by the

debtor company to have the property sold· in separate parcels, and having been used as one property, and known as one property, and there being nothing in the complaint nor anything in the testimony showing that an increased sum could have been had for the properties if sold separately, we think the contention that the sale is invalid by reason of the properties having been sold *en masse,* untenable.   This view is supported by the case of *Rauer* v. *Hertweck,* 175 Cal. 278 [165 Pac. 946], and other cases which might be cited.   █   Furthermore, as stated in the case of *Colver* v. *W. B. Scarborough,* 73 Cal. App. 441 [238 Pac. 1104], this objection should have been raised by motion to set aside the sale.   In the case just cited we find the following : ''At the outset it may be stated as a general rule supported by many authorities, that in a proceeding to set aside a sale under execution, excepting where some special facts are alleged which may create jurisdiction in a court of equity, the proper procedure is by motion to vacate the sale in the action under which it is claimed any ·irregularities occurred.   (23 Cor. Jur. 682 et seq.; *Boles* v. *Johnston,* 23 Cal. 226 [83 Am. Dec. 111] ; *Ketchum* v. *Crippen,* 37 Cal. 223; *Browne* v. *Ferrea,* 51 Cal. 552; *Craig* v. *Stansbury,* 37 Cal. App. 668 [174 Pac. 404], where the authorities are reviewed; *Morris* v. *Winans,* 30 Cal. App. 575 [159 Pac. 213].) ''

█   The principal ground of objection urged by the appellant is based upon the fact that no actual cash passed from the bidder at the sheriff's sale to the sheriff, but that the respective executions in the sheriff's hands were settled by the giving of receipts and the satisfaction of judgments.   A number of cases are cited, such as *People* v. *Hayes,* 5 Cal. 66, 67, *Askew* v. *Ebberts,* 22 Cal. 263, *Maina* v. *Elliott,* 51 Cal. 8, and others, to the effect that the purchaser is not entitled to a deed unless he has paid to the sheriff a sum of money equal to the amount of his bid.   These cases are readily distinguishable from the case at bar.   Applied to the case at bar the purchaser would not have been entitled to a certificate of sale, and after the time for redemption had expired, to a deed to the property sold, unless there had been passed by the purchaser to the sheriff the amount of the bid, or as we shall show by subsequent citations, that which in substance amounted to a payment of the sum bid.

Principal reliance is placed by the appellant, first, upon the case of *Meherin* v. *Saunders*, 131 Cal. 681 [63 Pac. 1084, 54 L. R. A. 272]. An examination of this case reveals that the only question involved was the liability of the purchaser by reason of having stopped payment upon a check given in payment of the amount of his bid, in addition to the costs which were paid to the sheriff in cash. This statement shows that it is not authority for the determination of any question presented upon this appeal.

The second case cited as supporting the plaintiff's contention that reversal should be had because no actual money passed from the purchaser to the sheriff is that of *Woods* v. *Kellerman*, 3 Cal. App. 422 [89 Pac. 358]. The following excerpt from that opinion furnishes the basis for the appellant's contention, to wit: ''Where there are several executions against the same property in the hands of the sheriff, any sale made by the sheriff, though under junior execution, is not a sale upon all the executions; and the money is not to be credited on the several liens in the order of their priority.'' Without questioning the correctness of this quotation as a rule of law it does not hold that where a sale is made by a sheriff upon the first execution placed in his hands, the proceeds derived from the sale may not by the sheriff be applied toward satisfying the junior executions based upon judgments against the same defendant, which executions were in the hands of the sheriff prior to the sale. ■■ The sale upon the prior executions extinguishes the lien of junior judgments and executions, whereas a sale on a junior judgment and execution leaves the property subject to the prior judgments, liens and executions. Thus, the principle as to the distribution of the proceeds when the sale is made under a junior execution has no application where the sale is made under a prior execution. When the sale is made under the prior execution the junior lienholders can only look to the proceeds after the first judgment has been satisfied, whereas, when the sale is made under a junior judgment and execution, prior lienholders may still have recourse against the property.

■■ While section 694 of the Code of Civil Procedure, setting forth the procedure governing sales, does not require, in so many words, that sale shall be for cash, section 695 of the same code does specify that if a purchaser refuses to pay the amount of the bid made by him, the officer may again

proceed with a subsequent sale, and that if any loss is suffered thereby, the first bidder who refuses to pay may be held liable.

Accepting the appellant's contention that the statute contemplates that payment should be made in cash, this does not exclude a manner of payment which substantially amounts to the same thing. Nor does the statute require any idle ceremony. In the case of *Moore* v. *Martin*, 38 Cal. 428, we find the following, touching the giving of receipts instead of payment in cash: "Had he purchased in his own name, and had the sheriff so understood it, he would have been required to pay not the costs but the bid which he did not pay but receipted for on the back of the execution." (This relates to the plaintiff's attorney.) "It would be a very strange proceeding for the purchaser, who is not the judgment-creditor, to receipt on the back of the execution for the amount of his bid instead of paying it to the sheriff. By such a proceeding the judgment-creditor would hardly come into the proceeds of the sale. But where the property is bid off by the plaintiff in the execution, or by his attorney for him, the universal practice is to receipt for the amount of the bid, less the costs, upon the back of the execution, and pay the sheriff his costs only. To pay money to the sheriff merely to have it returned would be an idle ceremony. This return on the execution must be read in the light of this practice, and when so read, we think its meaning is not doubtful." (The return on the execution showed satisfaction thereof.)

In section 196, "Freeman on Executions", volume 2, third edition, we find the following: "The purchaser at the sale under the junior lien acquires a title which may be divested by a subsequent sale under an elder lien." This relates to mortgages. Under executions based upon judgments, we find the following: "With sales made under execution, the rule is different. If a sheriff has two or more writs in his hands, it is his duty to apply the proceeds to the writ having the elder lien. He may, however, levy and sell under the junior writ. If he does so, the purchaser acquires title to the property sold, free from the lien of all the other writs. In such an event, the plaintiff under whose junior writ the levy and sale were made is not entitled to the proceeds of the sale. On the contrary, it is the duty of the sheriff to apply these proceeds to the several writs that may be in his hands, accord-

ing to their priority as liens. A sale, when made by the officer, is not for the benefit of the particular writ under which it is made, but for the benefit of all writs in his hands, according to their respective priorities.'' This rule as to priorities differs from the rule adopted in this state, but substantially follows what we think is the proper rule with regard to the disposition of proceeds, to wit: A sale under a junior lien leaves the property subject to prior liens, while a sale under a prior lien extinguishes all the junior liens, and under the rules set forth in ''Freeman on Executions'', the proceeds should be distributed by the sheriff in satisfaction of other executions in his hands, according to the priorities thereof.

It seems to be the rule, also, that if there is any dispute concerning the subsequent liens, the money should be paid into court, to be distributed upon the order of the court, according to the rights of the parties as the court should determine. In the instant case there appears no contention as to priorities, as the purchaser at the execution sale was the owner by assignment of the four other judgments and executions referred to herein.

There seems to be a difference, also, in the application of the rule concerning the effect of sales under prior and junior executions. In a number of states it is held that a sale under a junior execution relieves the property from all prior liens, and that the proceeds of the sale should be applied to the settlement of the prior liens. On the other hand, the majority of the jurisdictions hold to the rule that it is only a sale under a prior lien which relieves the property from the lien of junior executions. The right to the proceeds, however, appears to be just as we have stated. We quote from ''Freeman on Executions'', sections 338, volume 3, third edition, as follows: ''In some states a sale of property under executions has in most cases the effect of transferring title regardless both of junior and of senior liens against the property. The claim of the lienholders is released from the property, and attached to its proceeds in the hands of the officer.'' As the rule is applied in this state, it has the effect, when a sale is made under a prior lien, of releasing the property from the subsequent liens, and the rights of subsequent lienholders attach only to the proceeds after the judgment held by the prior lienholder has been fully satisfied.

In 23 C. J., page 649, the procedure followed in *Moore* v. *Martin, supra,* is approved. It is there said: "In some jurisdictions where the judgment-creditor becomes a purchaser at the execution sale, the officer should, at the direction of such judgment, credit the amount of his debt upon the execution if the costs of the sale are paid, but not where he refuses to make a payment at least sufficient to cover the costs, although the sale is not rendered incomplete by the fact that the officer failed to pay over the costs to the clerk of the court. If the bid exceeds the amount due, he must pay the excess. Where there are other liens on the property of equal dignity with the lien of the judgment-creditor, the officer may require him to pay over the purchase money in order that he may deposit the same in court to await a judicial decision as to the distribution thereof." And further: "Where the purchaser is a mortgagee whose mortgage has priority over the execution, he may retain the amount of his debt. If the judgment is prior to the mortgage, the purchaser may apply his mortgage on the amount of his bid in excess of the execution debt. Under some statutes lien creditors may pay by giving a receipt."

In the instant case the defendant was not only a lien creditor, by reason of the assignment of the different judgments, but was also the holder of all the executions issued on the different judgments, and entitled to receive payment thereof, and under the authorities which we have cited, and what we have stated, entitled to receive from the sheriff payment out of the proceeds of the sale of the property to the extent of the several judgments. This enforces again the rule that it would have been only an idle gesture to pay the actual money over to the sheriff of Sierra County, and then have the sheriff immediately return the money to the Alpha Hardware & Supply Company.

In addition to the authorities cited supporting the procedure approved in the foregoing, we may call attention to the notes following the case of *Gillespie* v. *Keating,* 180 Pa. St. 150 [36 Atl. 641, 57 Am. St. Rep. 622–625] ; 11 Cal. Jur., p. 81, sec. 34.

In *Kelly* v. *Barnet,* 24 Cal. App. 119 [140 Pac. 605], it is held that while a judgment-creditor who bids in property at an execution sale for the amount of his judgment, as a matter of convenience may arrange with the officer making

the sale to have the latter accept his receipt for the amount of the judgment in lieu of cash, the sheriff is not required to do so. Thus, approving the rule that if the sheriff accepts the receipt, and the judgment is satisfied, in substance and effect it amounts to the same thing as though actual cash had bcen passed to and fro, from purchaser to sheriff and sheriff to purchaser.

We may also call attention to the case of *Gregory* v. *Bovier,* 77 Cal. 121 [19 Pac. 232], which holds that after the period of redemption has expired, it is too late to attack the sale on the ground that the property was sold *en masse* instead of in separate parcels.

Finding no substantial errors in the record, it follows that the judgment must be affirmed. And it is so ordered.

Pullen, P. J., and Thompson, J., concurred.